UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARISA MARTINEZ,

                      Plaintiff,

v.

COSTCO WHOLSESALE
CORPORATION,

                      Defendant.

Case No.:  19-CV-1195-GPC-WVG

**ORDER ON DEFENDANT'S
MOTION TO STRIKE PLAINTIFF'S
SUPPLEMENTAL EXPERT
REPORT**

## I.     INTRODUCTION

"It's better to ask for forgiveness than to seek permission."  At least that is what Plaintiff, Marisa Martinez, ("Plaintiff" or "Martinez") thought. In this discovery dispute Plaintiff seeks this Court's forgiveness for her abuse of set discovery deadlines. She could have sought permission to have deadlines extended but chose not to.  But even the adage does not do justice to Plaintiff's cavalier approach to discovery. Plaintiff's Opposition to Costco Wholesale Corporation's ("Defendant" or "Costco") Motion to Strike Plaintiff's Supplemental Expert Report blatantly defends Plaintiff's failure to timely serve her supplemental expert report by three days – all without rhyme, reason, or a shred of regret. Plaintiff offers her expert's summer vacation and the ongoing COVID-19 pandemic as a

1   showing of good cause to justify her disruption to the Parties' discovery efforts and the
2   operative Scheduling Order. While Plaintiff's excuses abound, good cause does not. For
3   the reasons explained below, the Court GRANTS Defendant's Motion to Strike Plaintiff's
4   Supplemental Expert Report in entirety.

5   **II.    PROCEDURAL HISTORY**

6          On April 23, 2019, this Court issued the operative Scheduling Order. (Doc. No. 5.)
7   In relevant part, the Court set a March 6, 2020 deadline for the Parties to exchange expert
8   reports. (*Id.*) Supplemental expert reports were due on April 3, 2020. (*Id.*) On February 28,
9   2020, Plaintiff's counsel requested Defendant's stipulation to a month-long continuance of
10  the March 6, 2020 expert disclosure deadline, after learning Plaintiff's expert "will be away
11  on vacation for roughly the first two weeks of March [2020]." (Doc. No. 19-1, 40.)
12  Defendant agreed to Plaintiff's request. (*Id.*) On March 2, 2020, the Parties filed a Joint
13  Motion to Continue Expert Disclosure Date and requested 45-day continuances of the
14  expert disclosure and supplemental expert disclosure deadlines and the expert discovery
15  cut-off. (Doc. No. 14.) On March 3, 2020, the Court denied the Parties' Joint Motion for
16  lack of good cause.

17         On March 5, 2020, the Parties renewed their Joint Motion to Continue Expert
18  Disclosure Date ("Joint Motion"). The Joint Motion sought 45-day extensions of: (1) the
19  March 6, 2020 expert disclosure deadline; (2) the April 3, 2020 supplemental expert
20  disclosure deadline; and (3) the May 1, 2020 expert discovery cut-off. (Doc. No. 16.) On
21  March 6, 2020, the Court issued an order granting in part and denying in part the Parties'
22  Joint Motion. (Doc. No. 17.) Respectively, the Court continued (1) the expert disclosure
23  deadline to April 6, 2020; (2) the supplemental expert disclosure deadline to April 27,
24  2020; and (3) the expert discovery cut-off to May 15, 2020. The Court made clear "no
25  further continuances [would] be granted in this matter absent an unequivocal, thoroughly
26  explained showing of good cause." (*Id.*) In concluding, the Court "urg[ed] counsel to
27  clearly communicate all relevant deadlines in the Court's Scheduling Order to any expert

the Parties seek to retain, prior to their retention, and certainly at the outset of retaining any such expert." (*Id*.)

Plaintiff timely served her supplemental expert report on April 6, 2020. The supplemental expert report consisted of six opinions, all of which concluded for various reasons that Defendant's conduct "fell below the standard of care" Defendant owed Plaintiff for the duration of her employment. (Doc. No. 19-1, 43-86.) In deposition, Plaintiff's expert admitted she "had not done any work prior to March 3 at all" even though she possessed all materials to inform her expert opinion. (*Id*., 102:16-17.) Plaintiff's expert testified she read "a few pages before and a few pages after" deposition pages Plaintiff's counsel cited in answering her questions because "[s]he didn't have time to read the full transcripts" while on vacation. (*Id*., 103:9-12, 209:14-18; 210:16-25.) Plaintiff's expert added she had only read "the first 80 pages of [Plaintiff's deposition] transcript" and that she "did not read Volume II" of Plaintiff's deposition transcript to any extent. (*Id.*, 212:4-19.) Then came the April 27, 2020 deadline for the Parties to exchange supplemental expert reports. Defendant met its deadline; Plaintiff did not. Plaintiff's supplemental expert report arrived three days later on April 30, 2020. Plaintiff's expert could not recall exactly when she began to prepare the supplemental report but testified it was either one or two days prior to April 30, 2020. (*Id.*, 207: 17-25.)

On May 13, 2020, the Parties notified this Court's Chambers of the instant discovery dispute. On that same day, the Court issued its Order Setting Briefing Schedule. (Doc. No. 18.) Defendant timely filed its Motion to Strike Plaintiff Marissa Martinez's Supplemental Expert Report on May 18, 2020. (Doc. No. 19.) On May 22, 2020, Plaintiff timely filed her Opposition to Defendant's Motion to Strike. (Doc. No. 20.) Defendant moves to strike Plaintiff's supplemental expert report on procedural and substantive grounds, namely for the report's untimeliness and effort to rewrite or "do over" the expert's initial report. Plaintiff dismisses her "only" three-day delay in serving her supplemental expert report as negligible. (*Id.*, 1:8.) Moreover, Plaintiff responds she is entitled to entry of her supplemental expert report as evidence because "its inclusion will cause Defendant no

19-CV-1195-GPC-WVG

prejudice." (*Id*., 1:17.) Substantively, Plaintiff defends the contents of the supplemental expert report as compliant with Federal Rule of Civil Procedure 26(e). The Parties' dispute is ripe for this Court's adjudication[1].

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure Rule 26 applies here. Under Rule 26(a), litigants must disclose all expert opinions and related materials that may be used at trial and make such disclosures at the times directed by the court. Fed. R. Civ. P. 26(a)(2)(C); *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1061–62 (C.D. Cal. May 26, 2010); *Epitech, Inc. v. Krause*, 2016 WL 7637660, at \*2 (C.D. Cal. Sept. 21, 2016). Further, Rule 26(e) obligates parties to supplement an initial expert report served pursuant to Rule 26(a) "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, <u>and</u> if the additional or corrective information has not otherwise been made known to the other parties ...." Fed. R. Civ. P. 26(e); *Cueto v. Overseas Shipholding Group, Inc.*, 2012 WL 28357, at \*2 (S.D. Cal. Jan. 4, 2012). "In determining whether a supplement under Rule 26(e) is appropriate, the court considers (1) whether the supplemental information correspond[s] to a prior Rule 26(a) disclosure and, if so, (2) whether the supplemental information [was] available at the time set for the initial disclosure." *Ibekwe v. White*, 2016 WL 6963051, at \*4 (C.D. Cal. Feb. 23, 2016) (citing *Burger v. Excel Contractors, Inc.*, 2013 WL 5781724, at \*3 (D. Nev. Oct. 25, 2013).

"Rule 37(c)(1) gives teeth to [Rule 26's] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). This rule excludes untimely expert witness testimony, unless the "parties' failure to disclose the required information is substantially justified or harmless." *Yeti by Molly, Ltd.*, 259 F.3d at

---

[1] The Court apologizes to the Parties for its delay in issuing the instant discovery order. The Court expects the Parties to efficiently and expeditiously tend to their duties.  No less should be expected of this Court.

1062. Furthermore, a party that fails to comply with a scheduling order is subject to the sanctions available to a court to enforce its orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii). Fed. R. Civ. P. 16(f).

IV.   **DISCUSSION**

    a. **Plaintiff's Supplemental Expert Report Merits Striking for Its Untimeliness**

Rule 16(b)(4) "provides that a district court's scheduling order may be modified upon a showing of 'good cause,' an inquiry which focuses on the reasonable diligence of the moving party." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n. 6 (9th Cir.2007) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992)). More specifically, in its discretion, a court may modify the operative discovery and pre-trial scheduling order "if [a deadline] cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16, Advisory Committee's Notes (1983 Amendment); *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 1119406, at *7 (S.D. Cal. Mar. 11, 2015) ("in part, the 'good cause' standard requires the parties to demonstrate that 'noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [a party's] diligent efforts to comply, because of the development of matters which could have not been reasonably foreseen…'"). At all times, "[the] focus of the inquiry is upon the moving party's reasons for seeking modification… If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609; *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. Jun.16, 1999).

Plaintiff had nearly eleven months to prepare and submit timely expert reports. Yet even with ample time, Plaintiff waited until four days before the expert disclosure was due to ask for an extension. The Court immediately denied that request but upon a second request submitted two days later, granted in part the requested extensions. As a threshold matter, it is undisputed Plaintiff served her supplemental expert report on April 30, 2020, three days after the April 27, 2020 deadline lapsed. At such point, Plaintiff had benefitted from an additional 24 days to prepare and finalize her supplemental expert report following

the Court's continuance of the initial April 3, 2020 deadline. (Doc. No. 5.) Nevertheless, at no time prior to the April 27th deadline (or even before serving her three day late and untimely April 30th report) did Plaintiff seek leave of Court to obtain additional time to serve her supplemental expert report. In the Court's March 6, 2020 Order, Plaintiff was given proverbial marching orders to make "an unequivocal, thoroughly explained showing of good cause" if she were to bring any additional requests to modify the operative Scheduling Order. (Doc. No. 17.) Yet, Plaintiff did not do so at any time on or after the issuance of the Court's March 6, 2020 Order.

The docket in this matter reflects Plaintiff's knowledge and availment of straightforward filing procedures that would have permitted Plaintiff to move the Court for another continuance. Plaintiff chose to instead set back the Parties' discovery efforts and deposition schedule by untimely serving her supplemental expert report and seeking the Court's blessing retroactively. Now, Plaintiff attempts to trivialize her three-day delay by vaguely referring to "the ever-changing challenges imposed by the Coronavirus pandemic and the short turnaround time between March 6 and April 26." (Doc. No. 20, 8:5-10.) Unlike Plaintiff, the Court takes lightly neither the deadlines the Parties are charged with under Rule 26 nor the good cause standard as defined by the Ninth Circuit. Indeed, Plaintiff's nonchalance about her "mere" three-day non-compliance with the operative Scheduling Order is almost as glaring as Plaintiff's ill-placed blame on the COVID-19 pandemic for her expert's non-compliant supplemental expert report. *Kennis v. Metro. W. Asset Mgmt., LLC*, 2018 WL 9440483, at *5 (C.D. Cal. Nov. 29, 2018) (observing "Rule 26(e) does not provide a party free rein to continue developing expert testimony beyond the deadline set in the Scheduling Order" in granting in part defendant's motion to strike plaintiff's supplemental expert report for untimeliness, amongst substantive grounds).

On March 4, 2020, Governor Newsom declared a state of emergency across California in light of the COVID-19 pandemic. *See* https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/. Plaintiff's expert did not testify in

deposition that she considered rescheduling her two-week vacation in early March due to the pandemic's eruption or that she abandoned her vacation at any time after Governor Newsom declared a state-wide public health emergency.  In fact, Plaintiff's expert's deposition testimony wholly belies Plaintiff's Opposition in that the expert admitted she believed she had insufficient time to review all relevant materials *because she was on vacation* and not for any other reason.

This Court can only presume at this point that when Plaintiff retained the services of her expert the two had discussed and reviewed the Court's operative Scheduling Order. Had they done so, then it would have been apparent that the expert's disclosure was due on March 6th, and supplemental disclosures were due on April 3rd.  These dates were not just recently set by the Court.  Rather, these deadlines were well known by the parties and particularly Plaintiff as early as April 23, 2019, nearly eleven months prior.  Yet, armed with this information, Plaintiff's expert chose to go on vacation exactly when her initial report was due.[2]  Plaintiff's expert also knew at the time of her early March 2020 vacation that the Court ultimately granted a reprieve from the reporting deadlines, ultimately extending both the expert disclosure deadline and supplemental expert disclosure deadlines to April 6th and April 27th respectively. Equally significant, Plaintiff's expert admits she had all of the discovery materials, including complete deposition transcripts, she needed prior to her vacation to timely prepare her initial and supplemental expert reports.

Plaintiff attempts to seek convenient refuge for her tardiness by laying blame on the recent COVID-19 pandemic.  True, the pandemic has wreaked havoc in many ways on business, social events, and even courts across the country.  But in this District, the Court has stayed open and civil cases particularly have continued to move forward with little to

---

[2] Plaintiff had several options.  Perhaps, knowing the expert deadlines set by the Court on April 23, 2019, either the expert should have respectfully declined the retainer if she had her vacation already planned and could not alter her schedule, or Plaintiff should have retained a different expert who did not have a scheduling conflict, or Plaintiff could have immediately alerted the Court well before March 2, 2020 to seek a modification of the March 6, 2020 expert disclosure deadline.

no disruption in progress.  The Court certainly is sensitive to the impact that the COVID-19 pandemic may have on litigants and attorneys and has granted accommodations when justified.  But here, Plaintiff simply says the word "COVID-19" as if it, in and of itself, is justification to excuse delays and dereliction without providing any support.  For example, was Plaintiff's expert herself affected by the virus, or someone she cares for?  Did COVID-19 prevent the expert from accessing important information she needed?  Apparently, none of these things or more occurred because if they had, Plaintiff most assuredly would have included these challenges in her papers.  Rather, it appears, the Parties continued engaging in written discovery and in taking and defending depositions without apparent obstruction to the flow of information and documents relevant to this litigation. Under such circumstances, any alleged disturbances to the Parties' exchange of discovery due to the COVID-19 pandemic ring hollow. As such, the Court finds Plaintiff's Opposition reads disingenuously by holding out a public health crisis to excuse Plaintiff's violation of the operative Scheduling Order, as modified by this Court on March 6, 2020. (Doc. Nos. 5, 17.) The Court will not entertain it. For this reason alone, the Court STRIKES Plaintiff's supplemental expert report from the record.

### b. Plaintiff's Supplemental Expert Report Impermissibly Exceeds the Scope of Supplementation under Rule 26(e)

Separate from its procedural findings above, the Court concludes that Plaintiff breached the bounds of Rule 26(e)'s duty to supplement initial expert disclosures. As noted, Plaintiff's initial expert report memorialized six opinions, all of which determined Defendant breached its duty of care to Plaintiff in responding to Plaintiff's accommodation requests and engaging in the interactive process with Plaintiff. In other words, the initial expert report exclusively addressed a subset of issues arising from two overarching claims, namely Plaintiff's failure to provide reasonable accommodation claim and related failure to engage in a good faith interactive process claim. But Plaintiff's supplemental expert report includes a seventh opinion relating to Defendant's Vice President of Human Resource's internal investigation of Plaintiff's disability-related claims. In doing so, the

supplemental report impermissibly widens the reach of the initial expert report by exploring and opining on a claim angled at Defendant's internal investigation, rather than Defendant's response to Plaintiff's accommodations requests and/or conduct throughout the interactive process. Further, the supplemental report doubly violates Rule 26(e) by enriching the initial expert report with detail that was admittedly available to Plaintiff's expert at the time she drafted the initial expert report.

From the outset of its discussion here, the Court turns to Plaintiff's expert's own words in characterizing the nature of her supplemental export report. In deposition, defense counsel asked Plaintiff's expert when she "first realized that [her] opinions and [her] report of April 6 were not complete." (Doc. No. 19-1, 215: 8-9.) Tellingly, Plaintiff's expert responded, "I realized once I started reading [three individuals'] deposition transcripts in full that… my opinions were becoming more detailed" and that she "had not addressed [Defendant's internal investigation] at all." (*Id.*, 215:10-17.) Plaintiff's expert added that after having the "opportunity to read the entire transcript of [Defendant's investigator's deposition] [she] thought that [she] had some opinions about her investigation of the retaliation, harassment, and discrimination complaint of Marisa…" (*Id.*, 208:21-25.) Taking these circumstances into account, Plaintiff's expert admitted, once she "fully read [Defendant's investigator's] transcript," she asked defense counsel "if [she] could add a new opinion in [her] actual written report." (*Id.*, 206:2-4.) Plaintiff's expert ultimately did so and stated in deposition she "went ahead and updated [her] report on April 30 with a new opinion," clarifying that Opinion 7 was her "new" opinion. (*Id.*, 208: 5-12.)

Plaintiff's expert's testimony seals Plaintiff's fate on this discovery issue. "Supplementing an expert report pursuant to Rule 26(e) means 'correcting inaccuracies or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Sherwin–Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 1119406, at *6 (S.D. Cal. Mar. 11, 2015).; *Gerawan Farming, Inc. v. Rehig Pacific Co.*, 2013 WL 1982797, at *5 (E.D. Cal. May 13, 2013) (citing *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)). Moreover, this Court and others within the

Ninth Circuit "have rejected supplemental expert reports that were significantly different from the expert's original report and effectively altered the expert's theories or attempted to deepen and strengthen the experts' prior reports." *Sherwin–Williams Co.*, 2015 WL 1119406, at *7. Further, "supplementation does not cover failures of omission because the expert did an inadequate or incomplete preparation[.] To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation." *Id*. (internal citation and quotation marks omitted).

As noted, Rule 26(e) does not permit "a party to introduce new opinions after the disclosure deadline under the guise of a 'supplement.'" *Plumley*, 836 F. Supp. 2d at 1062. Yet that is what Plaintiff endeavors to do here in her Opposition to Defendant's Motion to Strike. By her own admission, Plaintiff's expert was in possession of all deposition transcripts and discovery materials she needed prior to setting off on her two-week vacation with initial and supplemental expert disclosure deadlines looming. Thus, Plaintiff cannot argue in good faith that her expert's supplemental report was "based on information that was not available at the time of the initial disclosure." *Sherwin-Williams, Co.*, 2015 WL 1119406, at *6. Plaintiff's expert had a library of information and documents to review, analyze, and opine on for both her initial and supplemental expert reports. Her unilateral decision to set aside a thorough study of these materials in a timely manner is Plaintiff's burden to bear and no one else's. There was no new information presented to Plaintiff's expert upon her return from vacation and subsequent preparation of the supplemental expert report. The only news to Plaintiff's expert was her midnight discovery of the contents of papers sitting atop her desk, which informed her "new" seventh opinion and bolstering of previous opinions memorialized in her initial expert report. Of course, this is no legitimate basis to allow Plaintiff's supplemental expert report to be adopted into the record. For this additional reason, the Court GRANTS Defendant's Motion to Strike and STRIKES from the record Plaintiff's supplemental expert report.

/ / /

### c. Plaintiff's Supplemental Expert Report Is Unjustified and Not Harmless

In line with Rule 37(c), a party's untimely expert disclosures in discovery may bar the party from "us[ing] that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was 'substantially justified' or is 'harmless.'" Fed. R. Civ. P. 37(c)(1). "The burden is on the party facing sanctions to prove harmlessness." *Ibekwe*, 2016 WL 6963051, at *4 (citing *Yeti by Molly, Ltd.*, 259 F.3d at 1106–1107 (affirming district court's decision to exclude defendant's witness testimony where defendant disclosed evidence 28 days prior to trial even where the exclusion made it "difficult, perhaps almost impossible" for defendant to rebut plaintiff's claim). For the reasons discussed at length above, the Court finds Plaintiff has shown neither justifiability nor harmlessness. At all relevant times, Plaintiff's expert was aware of the discovery deadlines implicating her preparation and Plaintiff's service of her initial and supplemental expert reports. As such, that Plaintiff's expert knew she also gained a 30-day extension to complete her initial and supplemental reports is a given. Nevertheless, Plaintiff served her supplemental expert report three days late after admitting she could not find sufficient time to meet her deadline in light of her two-week vacation. Now, Plaintiff points to the COVID-19 pandemic as the basis for her expert discovery woes. Not so.

Moreover, Plaintiff's characterization of her expert's non-compliance with the operative Scheduling Order as "harmless" is as bold as Plaintiff's claim the non-compliance was justified. Strikingly, Plaintiff's Opposition contends "Defendant received [the expert's] updated report prior to her deposition, giving Defendant sufficient opportunity to review the report and remedy any purported surprise or prejudice before her deposition." (Doc. No. 20, 12:22-24.) One can hardly call harmless an opponent's service of new and expansive expert opinions just hours prior to an expert's noticed deposition. Yes, it is true that Plaintiff agreed to continue for a week her expert's deposition. Faced with a Hobson's choice to either go forward with the deposition as scheduled and be unprepared or delay it by one week and try to mitigate some of the damage caused by the

untimely disclosure of the supplemental report, Costco chose the latter option. Further, Plaintiff's Opposition is entirely silent as to the fact that Plaintiff wholly deprived Defendant of the opportunity to address or otherwise respond to Plaintiff's overreaching supplemental expert report. If it were inclined to set an additional rebuttal expert report deadline, which it is not, the Court would effectively be imposing further unnecessary litigation costs and expense on Defendant, all in an effort to accommodate Plaintiff's non-compliance. The Court will not do so here and refuses to legitimize Plaintiff's careless approach to discovery. To that end, the Court DENIES without prejudice Defendant's request for monetary sanctions as reimbursement for the attorney fees and costs Defendant incurred in being forced to file its instant Motion to Strike.  Defendant shall file and provide to opposing counsel **no later than Wednesday, July 29, 2020** its time records and cost sheets to support the requested sanction.  Plaintiff shall have until **Wednesday, August 5, 2020** to respond in opposition to Defendant's Motion for Attorney Fees and Costs

## V.     CONCLUSION

Given the above, the Court hereby GRANTS Defendant's Motion to Strike Plaintiff's Supplemental Expert Report. Plaintiff's Supplemental Report shall be excluded from the record in its entirety.

**IT IS SO ORDERED.**

Dated: July 22, 2020

Hon. William V. Gallo
United States Magistrate Judge

12

19-CV-1195-GPC-WVG