UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISA MARTINEZ,<br><br>                          Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE<br>CORPORATION,<br><br>                          Defendant. | Case No.: 19-CV-1195-WVG<br><br>**ORDER ON DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR** |

## I.    INTRODUCTION

Pending before the Court is Costco Wholesale Corporation's ("Defendant," "Costco," or "the Company") Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial or Remittitur ("Motion for JMOL" or "Motion"). (Doc. No. 131.) Defendant filed its Motion on July 7, 2022. (*Id.*) On August 4, 2022, Marisa Martinez ("Plaintiff") filed her Opposition to Defendant's Motion. (Doc. No. 132.) On August 19, 2022, Defendant replied to Plaintiff's Opposition. (Doc. No. 133.) On September 30, 2022, the Court convened a hearing on Defendant's Motion.[1] Having fully considered the entirety

---

[1] The September 30, 2022, hearing also addressed Plaintiff's pending Motion for Attorney Fees ("Fee Motion"). (Doc. No. 135.) The Court's instant Order is exclusively limited to

of the trial record and the Parties' motion practice, inclusive of oral argument, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Judgment as a Matter of Law, DENIES Defendant's Motion for New Trial, and DENIES Defendant's Motion for Remittitur. The Court explains below.

## II.   PROCEDURAL HISTORY

On May 13, 2019, Plaintiff filed a complaint against Defendant in San Diego Superior Court, alleging eight causes of action. (Doc. No. 1-2.) The bulk of Plaintiff's claims arose under California's Fair Employment and Housing Act ("FEHA"), namely (1) disability discrimination; (2) failure to accommodate; (3) failure to engage in the interactive process; (4) retaliation; and (5) failure to prevent discrimination. (*Id*.) Plaintiff also alleged (6) retaliation under California Labor Code section 1102.5; (7) negligent supervision; and (8) intentional infliction of emotional distress. (*Id*.) On June 26, 2019, Defendant timely removed the case to this Court. (Doc. No. 1.)

On June 5, 2020, Defendant filed a motion for partial summary judgment on all causes of action except Plaintiff's failure to accommodate claim ("reasonable accommodation claim"). (Doc. No. 21.) On August 21, 2020, then-presiding District Judge Gonzalo P. Curiel granted in part and denied in part Defendant's motion. (Doc. No. 30.) In doing so, Judge Curiel dismissed only Plaintiff's negligent supervision claim. Between September 2020 and April 2022, the Parties engaged in pre-trial proceedings before Judge Curiel. In pertinent part, on April 26, 2022, the Parties appeared for a telephonic status hearing before Judge Curiel, who ordered the Parties to confer regarding consenting to this Court's jurisdiction. (Doc. No. 71.) On April 27, 2022, the Parties consented to this Court's jurisdiction for all purposes, including trial. (Doc. No. 73.)

/ / /

/ / /

_____

Defendant's Motion for JMOL. The Court shall resolve by separate order Plaintiff's Fee Motion.

On May 23, 2022, the case proceeded to a jury trial. (Doc. No. 75.) On June 1, 2022, Defendant moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure, which this Court denied that same day. (Doc. No. 112.) On June 2, 2022, the first phase of trial concluded. (Doc. No. 113.) On June 3, 2022, the jury returned its verdict, finding for Defendant on all but one of Plaintiff's claims. (Doc. No. 114.) The jury awarded Plaintiff $1.7 million in compensatory damages, specifically $850,000 for past non-economic damages and $850,000 for future non-economic damages, on her lone successful claim for failure to engage in the interactive process ("interactive process claim"). (*Id*.; Doc. No. 117.) In so deciding, the jury answered affirmatively to Question 32 of the Special Verdict Forms, finding "by clear and convincing evidence that one or more officers, directors, or managing agents of Costco engaged in malicious, oppressive, or fraudulent conduct towards Ms. Martinez." (Doc. No. 117, 14.) The case then proceeded to its second phase of trial to resolve the matter of punitive damages.

The second phase of trial began and ended on June 6, 2022. (Doc. No. 120.) Defendant moved for judgment as a matter of law under Rule 50(a) as to punitive damages for lack of evidence of Defendant's financial condition. (Doc. No. 128, 2068:1-4.) The Court denied Defendant's motion on the record. (*Id*., 2068:8-13.) Later that same day, the jury returned its verdict in favor of Plaintiff in the amount of $150,000 in punitive damages. (Doc. No. 129.) On June 9, 2022, judgment was entered in favor of Plaintiff in the amount of $1,700,000 in non-economic damages and $150,000 in punitive damages. (Doc. No. 130.) On July 7, 2022, Defendant filed its instant Motion, which is now ripe for this Court's resolution.

### III.   FACTUAL BACKGROUND

The undisputed facts of this case are well known to the Parties and thoroughly recited in Judge Curiel's Order on Defendant's Motion for Summary Judgment. (Doc. No. 30.) The Court now revisits the undisputed facts pertinent to Defendant's post-trial request for relief and supplements the record with trial testimony accordingly.

/ / /

### a. Plaintiff's Work History at Costco

Plaintiff was a long-time Costco employee. She worked for the Company for nearly 26 years between October 1993 and March 2019. (Trial Tr. at 209:7-8; Doc. No. 23-1, P's Response to D's SSUF, Nos. 1, 46.) She began her career at Costco as a front-end clerk at the Kearny Mesa warehouse. (*Id.*; Doc. No. 21-5, McConnell Decl., Ex. 1, Martinez Dep. at 73:13-21.) In 1997, Plaintiff transitioned to a position as an Inventory Control Specialist, which was based out of Costco's San Diego Regional Office. (Trial Tr. at 209:8-10.) Plaintiff worked in this role until 2002, when she was promoted to her first management role as an Assistant Buyer. (Trial Tr. at 209:10-12; Doc. No. 21-5, McConnell Decl., Ex. 1, Martinez Dep. at 74:19-75:15.) Plaintiff served as an Assistant Buyer for the next five years. (*Id.*) In February 2007, she was promoted to a Buyer for Costco's locations in Mexico and was initially responsible for the Softlines Department. (*Id.*) Plaintiff later transitioned to the Housewares Department and remained in her role as a Buyer for Mexico until her resignation in March 2019. (Trial Tr. at 224:1-3; Doc. No. 103 at 1315:16-18.)

### b. Plaintiff's Supervisors at Costco

Julie Daleo, a General Merchandise Manager, ("Daleo") supervised Plaintiff for the last 12 years of her employment at Costco up until her resignation. (Trial Tr. at 253:8-9; Doc. No. 23-4, Gruenberg Decl., Ex. 2, Daleo Dep. at 19:19-20:4.) Daleo reported to Steve Mantanona, Vice President General Merchandise Manager ("Mantanona"). (*Id.* at 212:6-9; Doc. No. 23-1, P's Response to D's SSUF, No. 7.) Beginning in March 2018, Mantanona reported to Russ Miller, Executive Vice President of Costco ("Miller"). (*Id.* at 212:10-12; Doc. No. 23-1, P's Response to D's SSUF, No. 8.) Miller succeeded Dennis Zook ("Zook"). (*Id.* at 507:25-508:9.) Daleo and Mantanona were both involved in the decision to promote Plaintiff from an Assistant Buyer to a Buyer. (*Id.* at 486:5-7; Doc. No. 23-4, Gruenberg Decl., Ex. 2, Daleo Dep. at 19:13-18.)

/ / /

/ / /

/ / /

### c. Plaintiff's Job Duties

As a Buyer, Plaintiff was responsible for sourcing goods for Costco stores in Mexico and ensuring those products were ultimately stocked on store shelves. When Plaintiff was promoted to Buyer, the job description specified the Buyer "Identifies product[s] and negotiates terms of purchase and delivery for items to be sold in U.S. outlets of a membership warehouse chain. Tracks item performance. Oversees and directs activities of Assistant Buyer and Inventory Control Specialist. Travels to attend trade shows, location openings, and business meetings." (*Id.* at 488:18-489:17, Ex. 2; *see also* Doc. No. 21-5, D's App'x, Ex. 6 at 278.) Specific to Costco's travel requirement for Buyers, the job description indicated the Buyer "Travels by air and auto for 3-5 day trips 6-10 times per year, with occasional trips of 7-10 days, to attend trade shows, location openings, regional meetings, factory tours, and other business meetings." (*Id.*)

When Miller succeeded Zook in 2018, the change in leadership triggered a change in working conditions for Buyers. Specifically, Costco began to enforce a pre-existing requirement that Buyers for Mexico travel to Mexico at least three times yearly ("travel requirement"). (Trial Tr. at 778: 9-17, 1087:24-1085:3.) Prior to the change in leadership, the travel requirement was loosely enforced. (Trial Tr. at 778:4-17.) Mantanona first raised the travel requirement in an August 29, 2018, email to Plaintiff. (Doc. No. 103, 1240:19-24; Doc. No. 23-3, Gruenberg Decl., Ex. 1, Martinez Dep. at 306:5-11; Doc. No. 21-5, D's App'x, Ex. 8 at 282-283.) In his email, Mantanona explained "… it is vital for us to visit our market [in] Mexico. I asked that all buyers and assistant buyers get into our market to visit warehouses and competition at least three times per year…" (*Id.*) At trial, Plaintiff testified that, prior to Mantanona's 2018 email, no one at Costco told her she was required to visit Mexico three times per year. (Doc. No. 103, 1240:22-24.) The travel requirement also had not been listed in Plaintiff's job description. (*Id.* at 690:15-17.)

Mantanona formalized the travel requirement in a November 8, 2018, memorandum to Plaintiff. (*Id.* at 776:23-777:3; Doc. No. 21-5, D's App'x, Ex. 14 at 302-03.) In his memorandum, Mantanona emphasized "It is imperative that you be in country to personally

19-CV-1195-WVG

attend critical activities that can only be effectively done with 'boots on the ground,' including visits to our Mexico Costco locations… Travel to Mexico is an essential and non-negotiable part of your job…" (Doc. No. 103. at 776:23-777:3.) Up to and including the date of her resignation, Plaintiff disagreed with Costco's decision to enforce the travel requirement and was vocal about her concerns to travel to Mexico.

### d. Plaintiff's Work Performance as a Buyer

Throughout Plaintiff's tenure as a Buyer, Daleo conducted Plaintiff's annual performance evaluations. (Trial Tr. at 255:7-8; Doc. No. 23-4, Gruenberg Decl., Ex. 2, Daleo Dep. at 19:19-20:4.) In deposition, Daleo characterized Plaintiff's performance as "excellent" and Plaintiff's relationships with the San Diego office, imports departments, and the international division as "great." (Trial Tr. at 20:15-18, 38:14-18, 255:13-19.) At trial, Daleo affirmed her deposition testimony and referred to Plaintiff as ethical, honest, and hardworking. (*Id*. at 255:13-19, 258:15-260:4, 273:5-275:5, 275:25-276:6.) At trial, Mantanona described Plaintiff's performance as "good." (Doc. No. 102, 927:10-15.) Although he did not prepare Plaintiff's performance evaluations, Mantanona maintained a general practice of reviewing and signing her evaluations as administered by Daleo. (*Id*., 928:17-18.) Mantanona had the ability to correct Plaintiff's performance evaluations for error, but he never made any corrections. (*Id*., 927:1-9.) Mantanona also conceded he would not have characterized Plaintiff as having been unable to perform her job functions. (*Id*., 927:13-928:8.)

Despite Costco's established, albeit relaxed, travel requirement, Plaintiff traveled to Mexico just seven times in 12 years. (Doc. No. 103, 1228:14-15; Doc. No. 23-3, Gruenberg Decl., Ex. 1, Martinez Dep. at 306:19-307:8.) Averaging less than one trip to Mexico per year, Plaintiff testified no one ever told her she was "not doing a good job performing [her] duties and responsibilities as a buyer." (*Id*., 1241:3-5.) In deposition and at trial, Daleo confirmed the same. (Trial Tr. at 255:13-22, 661:14-24; Doc. No. 23-4, Gruenberg Decl., Ex. 2, Daleo Dep. at 104:16-105:2.) Indeed, before Mantanona's 2018 email and memorandum, Daleo, Mantanona, and other members of management did not so much as

reprimand Plaintiff for falling short in her trips to Mexico. At trial, Mantanona admitted he had never criticized Plaintiff for her failure to meet the travel requirement and, more broadly, that Plaintiff was never criticized for not being able to do her job. (Doc. No. 103, 927:16-24.) The most criticism – if it can be called that – Plaintiff faced was Daleo encouraging more travel to Mexico in an October 26, 2008, performance evaluation. In the evaluation, Daleo agreed with Plaintiff's statement that, "getting out of the office to attend… floor walks [in Mexico], and seeing competition in retail as well as club, will help me better understand my new department and categories." (Trial Tr. at 495:3-22.) Daleo wrote, "That is a great goal. I encourage and support Marisa in getting into the market competition factory tours and meeting with vendors." (*Id*. at 496:1-3.)

### e. Plaintiff's General and Travel-Related Anxiety

Plaintiff suffers from anxiety, which is the medical condition that supplies the basis of her disability here. Plaintiff treated with Dr. Brian Lenskes and Dan Bjierke, a licensed marriage and family therapist, to address her anxiety[2]. Dr. Lenskes treated Plaintiff for approximately 12 years. (Trial Tr. at 527:23-5:281.) He first met Plaintiff on February 5, 2008, in his medical office and had approximately 15 appointments with her over time. (*Id*. at 528:2-4530:20-531:7.) During Plaintiff's initial appointment, Dr. Lenskes diagnosed Plaintiff with generalized anxiety. (*Id*. at 530:20-531:7; 532:20-24.) Approximately one year later, in a May 6, 2009, note, Dr. Lenskes indicated Plaintiff was experiencing "major stress because she ha[d] to travel to Mexico for work." (*Id*. at 533:16-534:5.)

Plaintiff's anxiety did not cease over the course of Dr. Lenkses' treatment, although the reasons for her anxiety varied throughout the seasons of her life. During a March 22, 2011, appointment, Dr. Lenskes reported Plaintiff "feels overwhelmed as if she does not have enough time in the day" between her obligations at work and home. (*Id*. at 576:10-

---

[2] Dr. Lenskes testified at trial; Mr. Bjierke was unavailable to do the same. The Court's synopsis of Plaintiff's general and travel-related anxiety thus implicates only Dr. Lenskes' testimony and treating history with Plaintiff.

19-CV-1195-WVG

577:8.) During Plaintiff's July 24, 2017, annual examination, Dr. Lenskes noted Plaintiff "complained of chronic anxiety and tenseness" and that her anxiety during this time period was attributable to "ha[ving] to give a lot of presentations." (*Id*. at 535:8-536:5.) In or around November 2018, Plaintiff began treating with Mr. Bjierke, which coincided with her leave of absence from Costco due to her travel-related anxiety and need for accommodation. (Doc. No. 103, 1265:25-1266:12; Trial Tr. at 538:13-15.)

Throughout 2019, Plaintiff's travel-related anxiety became more pronounced. (Trial Tr. at 539:22-24.) Dr. Lenskes testified Plaintiff trembled and exhibited anxiety that was exacerbated whenever the topic of traveling to Mexico was broached. (*Id*. at 553:13-17, 559:16-560:10, 564:14-22.) On January 7, 2019, Plaintiff reported experiencing anxiety, insomnia, work-related stress, hypertension, and depression arising from her concerns about traveling to Mexico and not being accommodated at work. (*Id*. at 537:1-16.) Dr. Lenskes stated Plaintiff had "see[n] someone get beaten up in the street" when she traveled to Mexico and was concerned "it was unstable and that there w[as] a lot of gang violence… she felt [there] was inadequate security for her and her team while they were down there." (*Id*. at 539:18-19; 558:4-8.) Ten days later, in a January 17, 2019, letter to Costco's Human Resources Department, Dr. Lenskes recommended Plaintiff not travel to Mexico while he worked with her on her travel-related anxiety. (*Id*. at 552:8-553:7.) At trial, Dr. Lenskes added that Plaintiff did not want to go on a leave of absence and instead wanted to "do her normal job without travel to Mexico." (*Id*. at 564:23-565:3.)

### f.  Costco's Notice of Plaintiff's Travel-Related Anxiety

A trial, Plaintiff testified she first raised safety concerns about traveling to Mexico in 2009. (Trial Tr. at 1490:5-7.) In the August 29, 2018, email from Mantanona to Martinez, Plaintiff replied "I have been in Mexico for almost 12 years. I have been voicing my concerns about the safety of employee travel to Mexico for 9 of those years. I have sat in your office and asked about the policies and procedures that are in place if something were to happen to me or one of our employees while traveling in Mexico. You had no answers for me…" (Doc. No. 21-5, D's App'x, Ex. 8 at 282-283; *id*., Ex. 14 at 302-303.)

At trial, Daleo testified she learned Plaintiff suffered from anxiety "immediately" when Plaintiff became a Buyer in 2007. (Trial Tr. at 253:3-9.) Daleo further testified Plaintiff first requested safety precautions for traveling to Mexico within her second or third year of becoming a Buyer, which placed the request sometime between 2009 and 2010. (*Id*. at 280:24-281:5.) Daleo admitted she was aware, at such time, that Plaintiff feared traveling to Mexico due to increased crime targeting business travelers and believed "Costco was not providing her or other employees with adequate safety protections when traveling to Mexico." (*Id*. at 279:21-280:3; 280:16-19.) In deposition, Daleo estimated she spoke with Plaintiff on 15 occasions about Plaintiff's concerns about traveling to Mexico during this time period. (*Id*. at 282:5-7.) At trial, Daleo could not provide a specific estimate but said she had "weekly" conversations with Plaintiff about her travel-related concerns. (*Id*. at 282:8-10.)  Daleo added Plaintiff had a "high level of concern"[3] and that she was vocal about Costco's perceived lack of travel safety precautions. (*Id*. at 282:18-22.)

At trial, Mantanona testified he first learned Plaintiff suffered from anxiety in January 2019. (Doc. No. 102, 877:8-13.) Mantanona denied referring to Plaintiff as "Nervous Nelly." (*Id*., 877:14-18.) Mantanona also denied that, during a work trip to Mexico with Zook, Plaintiff, and others, he commented no one should "mess with Marisa because she's scared of being there." (*Id*., 878:4-15.) In reference to Plaintiff's travel concerns, Mantanona testified the "only time that ever came up" was in a meeting in August 2018, after he denied Plaintiff's request to travel to New York for a trade show because she had not yet booked a trip to Mexico. (*Id*., 881:5-18; 885:5-16.) Mantanona specified the meeting took place on either August 28 or 29 of 2018. (*Id*., 888:6-7.) He stated the meeting included himself, Plaintiff, Daleo, and Michelle Martinez, an Assistant General Merchandise Manager, but he could not recall any details. (*Id*., 888:2-14.) Mantanona summarized he was aware Plaintiff was concerned about traveling to Mexico, but he

---

[3] Daleo specifically stated, "Martinez was – was vocal. And there were two other employees that also had a high level of concern." (*Id*.)

believed each of her concerns was addressed at the meeting. (*Id.*, 888:25-889:2.) Mantanona later testified that, about three months later, in a November 8, 2018, meeting revisiting Plaintiff's travel-related concerns, Plaintiff was "visibly upset" and asked him if he had ever had his "hands or arms held down by a man." (*Id.*, 889:8-11.)

As to both the August and November 2018 meetings with Plaintiff, Mantanona denied that Plaintiff reminded him of an incident that occurred during a prior work trip to Mexico. (*Id.*, 890:15-17.) During that work trip, Plaintiff, Mantanona, Daleo, and other Costco employees traveled in a caravan of four vehicles. (Doc. No. 103, 1237:8-1238:5.) One of the vehicles was stopped and held at gunpoint, and Costco's Chief Financial Officer ("CFO") for Mexico was robbed. (*Id.*; Doc. No. 23-3, Gruenberg Decl., Ex. 1, Martinez Dep. at 130:3-12.). Mantanona said he recalled the incident, but he denied that Plaintiff brought it up in their meetings about her travel-related concerns.[4] (Doc. No. 102, 890:15-891:8.) Mantanona also testified that, in October 2018, Daleo mentioned Plaintiff was concerned about traveling to Mexico and Costco's safety protocols and "that was the first time [he] heard anything about the SOS program being a big concern." (*Id.*, 904:2-15.)

### g. Plaintiff's Accommodation Requests and Costco's Response

### i. Plaintiff's Accommodation Requests

During her employment with Costco, Plaintiff made various requests for accommodation of her travel-related anxiety. These accommodation requests included Costco (1) permitting her to work remotely for at least six months ("remote work"); (2) distributing travel safety protocols to Buyers as a means of confirming they would be implemented ("protocol distribution"); (3) allowing Plaintiff to fulfill the travel requirement by facilitating travel to Mexico in a group that consisted of at least four

---

[4] At trial, Plaintiff testified that, in the August 29, 2018, meeting, she "brought up the incident in the caravan in Mexico where Mauricio Talayero, Costco's CFO for Mexico, was held up at gunpoint." (Doc. No. 103, 1243:2-25.)

employees and included at least one man and one Spanish speaker ("group travel"); and (4) reassigning Plaintiff to a vacancy in her equivalent position ("reassignment").

### ii.  Costco's Response to Plaintiff's Accommodation Requests

#### 1.  August 29, 2018, Meeting on Plaintiff's Concerns and Requests for Protocol Distribution and Group Travel

As noted, Mantanona's August 29, 2018, email conveying Costco's travel requirement led to a same-day meeting between Mantanona, Plaintiff, Daleo, and Michelle Martinez to discuss Plaintiff's travel-related concerns. During the meeting, Plaintiff raised her requests for protocol distribution and group travel. As to protocol distribution, Plaintiff requested that protocols be distributed so there was proof "there [we]re policies and procedures in place that [we]re set up to protect [Costco's] employees," specifically other Buyers and Assistant Buyers for Mexico. (Trial Tr. at 1297:2-12.) As to group travel, Plaintiff explained she wanted a detailed itinerary, to travel in a group of at least four employees with at least one man and one Spanish speaker, and an armored vehicle. (Doc. No. 103, 1247:14-24; *see also* Doc. No. 23-1, P's Response to D's SSUF, No. 13; Doc. No. 23-3, Gruenberg Decl., Ex. 1, Martinez Dep. at 140:16-144:19.) At trial, Mantanona admitted he never got back to Plaintiff with a response to her accommodation requests. (Trial Tr. at 904:19-21.)

#### 2.  September 4, 2018, Meeting between Daleo and Plaintiff on Travel Safety Protocols

Daleo met with Plaintiff on September 4, 2018, to reconnect about Plaintiff's request for protocol distribution. (Trial Tr. at 621:17-622:5; Doc. No. 21-4, Mantanona Decl. ¶ 3; Doc. No. 21-5, D's App'x, Ex. 10 at 288.) During the meeting, Daleo read aloud each point from Costco's travel safety protocols. (*Id*. at 623:1-15; Doc. No. 21-5, McConnell Decl., Ex. 4, Daleo Dep. at 76:2-80:1.) Daleo did not confirm with Plaintiff that the safety protocols would be implemented. (*Id*. at 1248:17-18; Doc. No. 21-5, McConnell Decl., Ex. 4, Daleo Dep. at 77:14- 16; Doc. No. 23-3, Gruenberg Decl., Ex. 1, Martinez Dep. at 147:6-

18.) The protocols were not provided to the Buyers in writing and were not posted to Costco's intranet until February 6, 2019. (*Id*. at 1258:23-1259:1; Doc. No. 141 at 1779:1-8, 1878:1-4; Doc. No. 21-5, McConnell Decl., Ex. 4, Daleo Dep. at 85:22-25.)

### 3.  Plaintiff's Attempt to Book Group Travel to Mexico

Following her August 2018 meeting with Mantanona, Daleo, and Michelle Martinez, Plaintiff began planning a trip to Mexico with three of her colleagues. (Trial Tr. at 341:3-14, 1492:22-25; Doc. No. 23-3, Gruenberg Decl., Ex. 1, Martinez Dep. at 124:6-25.)  The trip was to take place in both Tijuana and Ensenada. (*Id*.) Daleo was aware of Plaintiff's efforts to travel as part of a group to Mexico and informed Mantanona of those efforts. (*Id*.) Mantanona responded that Plaintiff's planned trip would not count as a trip to Mexico, and that Plaintiff instead needed to travel to Mexico City via a commercial flight. (*Id*. at 341:15-20; Doc. No. 102, 917:116-23.) Daleo considered Mantanona's response odd because other buyers would go to Tijuana and Ensenada for their trips to Mexico. (*Id*. at 341:23-342:13; Doc. No. 23-4, Gruenberg Decl., Ex. 2, Daleo Dep. at 101:2-14.)

### 4.  October 15, 2018, Meeting between Plaintiff and Miller

On October 15, 2018, Plaintiff met with Russ Miller, Executive Vice President, to discuss her travel-related concerns. Miller testified Plaintiff pointed to Costco's travel advisory for Mexico to explain why she feared traveling to the country. (*Id*. at 754:10-15.) Miller recalled Plaintiff cited the advisories that violent crime in Mexico was common, foreign business travelers were at high risk, Mexico had the highest abduction rate in the world, and female travelers would be vulnerable to sexual assault. (*Id*. at 756:5-25, 757:5-7.) During the meeting, Miller provided Plaintiff a copy of a September 4, 2018, email from Becky Meda ("Meda") itemizing the safety protocols for travel to Mexico. (*Id*. at 769:24-770:1; Doc. No. 21-5, D's App'x, Ex. 12 at 298.) At the time of the meeting, Miller did not know whether the email was sent to Buyers or Assistant Buyers. (*Id*. at 770:15-18.) Plaintiff told Miller she had never seen the email before. (Doc. No. 102, 844:5-8.) Even so, Miller told Plaintiff the protocols listed in the email were in place. (*Id*. at 843:15-844:6.) After the meeting, Miller learned from Mantanona the email had not been sent to any

Buyers or Assistant Buyers. (*Id.* at 770:21-771:2, 773:22-774:4.) Plaintiff testified the protocols in the email would have been sufficient for her to fly commercially to Mexico had they been distributed. (*Id.* at 1496:24-1497:1.)

### 5. November 2, 2018, Meeting with Buyers for Mexico

On November 2, 2018, Costco convened a meeting amongst all Buyers to review the safety protocols for traveling to Mexico. (Doc. No. 103, 1259:9-11, 16-19.) Plaintiff did not attend the meeting due to a bout of bronchitis. (*Id.*, 1259:12-15.) She testified she did not receive any of the materials that were circulated to the Buyers at the meeting. (*Id.*, 1259:16-23.)

### 6. November 8, 2018 Meeting Regarding Mexico Travel Memorandum

On November 8, 2018, Plaintiff met with Mantanona, Daleo, and Michelle Martinez, where Mantanona provided her the memorandum setting forth Costco's travel requirement. (Doc. No. 21-5, D's App'x, Ex. 14 at 302-03.) The memorandum directed Plaintiff to decide within the next four weeks whether she would comply with the travel requirement. (*Id.* at 303.) The memorandum added that, if Plaintiff ultimately declined to travel, she had 60 days to find an open position at Costco and, if there was no open position, Plaintiff would be moved to a lower-ranking "ICS" position in San Diego. (*Id.*)

### 7. Plaintiff's November 8, 2018 Inquiry Regarding Vacancies

Following her November 8, 2018, meeting, on the same day, Plaintiff inquired about openings in the U.S. buying department within Costco. Plaintiff emailed her question to Debbie Calhoun ("Calhoun"), who oversaw domestic buyers assigned to the San Diego region. (Trial Tr. at 1514:5-24, Ex. 97.) On November 13, 2018, Calhoun responded there were no current openings amongst the buyer positions in her region. (*Id.*, 1516:25-1517:4.)

/ / /

/ / /

### 8. Plaintiff's Medical Leave from November 19, 2018, through January 14, 2019

Also subsequent to her November 8, 2018, meeting, Plaintiff scheduled a trip to Mexico City leaving November 27, 2018, with Miller and Mantanona. (Trial Tr. at 1517:7-15; Doc. No. 103, 1265:16-20.) Plaintiff then requested medical leave, which was later approved to begin November 19, 2018, and end on January 14, 2019. (Doc. No. 103, 1265:21-24; Doc. No. 23-1, P's Response to D's SSUF, Nos. 27, 28; Doc. No. 21-5, D's App'x, Ex. 15 at 305; *id.*, Ex. 16 at 307; *id.*, Ex. 17 at 314.) Consequently, Plaintiff canceled her November 27, 2018, work trip to Mexico. (*Id.*) Plaintiff returned to work on January 14, 2019, after Dr. Lenskes cleared her to work without restriction on January 9, 2019. (Trial Tr. at 548:11-549:24, Ex. 129, 1266:1-4; *Id.*, No. 29; Dkt. No. 21-5, D's App'x, Ex. 18 at 320.) Dr. Lenskes clarified he assumed Plaintiff would not be required to travel to Mexico when he wrote she could work without restriction. (Trial Tr. at 549:2-5; Doc. No. 21-5, D's App'x, Ex. 43, Lenzkes Dep. at 67:7-24.)

### 9. January 25, 2019, Email from Schmertzler to Plaintiff

On January 25, 2019, Cindy Schmertzler, Costco's Director of Integrated Leave, emailed Plaintiff to clarify her restrictions and ask Plaintiff what accommodations would allow her to travel to Mexico. (Trial Tr. at 1086:24-1087:18; Doc. No. 21-5, D's App'x, Ex. 21 at 326.) Plaintiff replied to the email on January 30, 2019. She attached a January 29, 2019, dated note from Dr. Lenskes indicating she could not travel to Mexico for six months or until Costco implemented appropriate safety measures. (*Id.*, Ex. 23 at 338-340.)

### 10. Weber's Investigation and February 8, 2019, Email to Plaintiff

On January 28, 2019, Daleo lodged a complaint on Plaintiff's behalf against Miller and Mantanona for retaliation and harassment. (Trial Tr. at 1162:13-20.) Schmertzler informed Brenda Weber, Vice President of Human Resources at Costco, and Weber then investigated Plaintiff's complaint. (*Id.* at 1139:14-19, 1155:16-23.) Weber spoke to

19-CV-1195-WVG

Plaintiff and Schmertzler one time to discuss the complaint. (*Id*. at 1139:17-23, 1155:24-1156-3.) Further, Weber interviewed Mantanona but not Daleo, despite knowing Daleo reported Plaintiff's concerns to Schmertzler. (*Id*. at 1160:20-22, 1162:17-23.) On February 8, 2019, Weber emailed her findings on the investigation to Plaintiff. (*Id*. at 1170:1-11.) Weber concluded no evidence supported Plaintiff's complaint of retaliation and added "the matter of travel to Mexico as a requirement is decided and will not be revisited further." (*Id*.; *id*. at 1171:3-11; Doc. No. 103, 1208:13-18.)

### 11. February 11, 2019, Phone Call between Plaintiff and Schmertzler

On February 11, 2019, Schmertzler and Plaintiff spoke by phone regarding Plaintiff's accommodation requests. (Trial Tr. at 1112:12-16.) On February 13, 2019, Schmertzler emailed Plaintiff a summary of their phone call. Schmertzler explained traveling to Mexico was an essential job function for Buyers for Mexico. (Trial Tr. at 1112:22-1113:8; *see also* Doc. No. 21-5, D's App'x Ex. No. 28 at 357.) Schmertzler added there were no current job openings Plaintiff could fill on a temporary basis. (*Id*. at 1113:14-22.) With this consideration in mind, Schmertzler stated Plaintiff would be placed on a six-month unpaid leave of absence, which would take effect at the end of the following week. (*Id*. at 1114:18-25.)

### 12. February 25, 2019, Medical Leave Approval

On February 23, 2019, Plaintiff submitted a February 22, 2019, dated note from Dr. Lenskes recommending she take medical leave to permit her sufficient time to address her anxiety. (Trial Tr. at 1117:8-19, Ex. 126; *see also* Doc. No. 21-5, D's App'x, Ex. No. 30 at 362; Doc. No. 21-5, D's App'x, Ex., No. 31 at 364). Two days later, on February 25, 2019, Plaintiff's request for leave was approved and, on February 28, 2019, Schmertzler emailed the approval to Plaintiff. (*Id*.; *see also* Doc. No. 21-5, D's App'x, Ex., No. 32 at 366.) In her email, Schmertzler noted Plaintiff would need to remain on leave until there was a "mutually acceptable agreement with her employer" regarding travel protocols to

19-CV-1195-WVG

Mexico. (*Id.*) This was Plaintiff and Costco's final communication before Plaintiff resigned.

### h. Plaintiff's Resignation from Her Employment with Costco

On March 7, 2019, Plaintiff informed Costco by email she was immediately resigning from her employment. (Trial Tr. at 1124:4-10, 1293:8-23, Ex. 51; *see also* Doc. No. 23-1, P's Response to D's SSUF, No. 46.) At trial, Plaintiff testified she felt forced to resign because she "was hitting a brick wall" when she turned to Daleo, Mantanona, Miller, Weber, Schmertzler, and Michelle Martinez, and upper management generally. (*Id*. at 1294:4-11.) Plaintiff added that, at the time of her resignation, the travel safety protocols had not been distributed to the entire staff and that no one had informed her about any new travel protocols that had been implemented. (*Id*. at 1294:22-1295:3.)

## IV.    LEGAL STANDARD FOR RULE 50(B) MOTIONS

A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion. Rather, it is a renewed Rule 50(a) motion. Under Rule 50, a party must make a Rule 50(a) motion for judgment as a matter of law before the case is submitted to the jury. *See* Fed. R. Civ. P. 50(b). If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b). (*Id.*) To that end, the party bringing a Rule 50(b) motion "wages an uphill battle." *Patel v. Cnty. of Riverside*, 2020 WL 6115081, at *2 (C.D. Cal. Apr. 28, 2020) (citing *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004).). Judges are "rarely entitled to disregard jury verdicts that are supported by substantial evidence." *Duke v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058 (9th Cir. 2003).

In considering Rule 50(b) motions, "the court must view all evidence in the light most favorable to the non-moving party… and draw all reasonable inferences in that party's favor." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006).). The appropriate test is whether "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Jorgensen v. Cassiday*, 320 F.3d 906, 917 (9th Cir. 2003); *see also Reed*

*v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).). Moreover, the Seventh Amendment requires the court to reconcile an inconsistent verdict in any possible way. *Norris v. Sysco*, 191 F.3d 1043, 1048 (9th Cir. 1999) (quoting *Toner v. Lederle Labs.*, 828 F.2d 510, 512 (9th Cir.1987).). The trial court may even assume "the jury's lay understanding of a particular legal concept differs from the court's" when attempting to harmonize specific discrepancies. *Floyd v. Laws*, 929 F.2d 1390, 1396 (9th Cir. 1991). Only when all such efforts fail may the court set aside the jury's verdict and enter judgment for the moving party as a matter of law. *Id*.

## V.   DISCUSSION

### a.  Defendant's Motion for Judgment as a Matter of Law

#### i.  The Jury's Verdict on Plaintiff's Interactive Process Claim

Defendant first argues substantial evidence does not underlie the jury's verdict on Plaintiff's interactive process claim. According to Defendant, Plaintiff introduced evidence at trial limited to two accommodations she requested during her employment: (1) remote work and (2) protocol distribution. Defendant adds Plaintiff failed to establish available accommodations she discovered once litigation commenced. Citing *Nadaf-Rahrov*[5], Defendant frames this evidentiary deficit as fatal to Plaintiff's interactive process claim. Plaintiff wholly disputes Defendant's position and contends Defendant improperly frames interactive process law. In doing so, Plaintiff argues substantial evidence supports the jury's verdict on Plaintiff's interactive claim despite the jury's finding that Defendant reasonably accommodated Plaintiff.

Alternatively, Defendant argues, even if substantial evidence supports Plaintiff's interactive process claim, there is no evidence that Plaintiff was actually harmed by Costco's failure to engage in the interactive process. Defendant concludes that, as a matter of law, the jury's compensatory damages award must be vacated. Plaintiff contests

---

[5] *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal.App.4th 952 (2008).

Defendant's position. She argues the trial record is replete with evidence of her emotional distress tied to the interactive process, or lack thereof, and, moreover, she is entitled to damages regardless of whether she incurred emotional distress from the interactive process itself.

The Court will exhaustively address the Parties' positions on both of Defendant's arguments on its Motion for JMOL. Before doing so, however, the Court first dissects the applicable law and then addresses two factual premises underpinning Defendant's arguments.

### 1. Interactive Process Law

#### a. Generally

Section 12940(n) of the FEHA controls interactive process claims. The interactive process requires timely, good faith communications between an employer and a disabled employee to determine what reasonable accommodations, if any, exist to accommodate the employee's restrictions. Cal. Gov't Code § 12940(n). The exercise is not philosophical but practical. It aims to "identify a reasonable accommodation that will enable the employee to perform the job effectively." *Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal. App. 5th 570, 600 (2016) (citing *Scotch v. Art Institute of California*, 173 Cal.App.4th 986, 1013 (2009).). Once initiated, the interactive process requires the employer to engage in good faith continuously, extending "beyond the first attempt at accommodation" and "where the employer is aware the initial accommodation is failing and further accommodation is needed." *Carrico v. CNA Ins.*, 2020 WL 5797698, at *14 (C.D. Cal. June 1, 2020) (citing *Scotch*, 173 Cal.App.4th at 1013).).

At all times throughout the interactive process, "both sides must communicate directly, exchange essential information, and neither side can delay or obstruct the process." *Perez v. Equinox Holdings, Inc.*, 2021 WL 6496396, at *6 (C.D. Cal. Nov. 27, 2021) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114-55 (9th Cir. 2000) (vacated on other grounds sub nom. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 122 (2002).). Where the interactive process breaks down, liability turns on the objective circumstances and

attaches to the party who ultimately caused the breakdown. *Jaco v. Winco Holdings, Inc.*, 2022 WL 525278, at *9 (E.D. Cal. Feb. 22, 2022) (citing *Rezvan v. Philips Electronics N.A. Corp.*, 2016 WL 8193160, at *5 (N.D. Cal. Dec. 15, 2016); *Nadaf-Rahrov*, 166 Cal. App. 4th at 985).).

### b.  Specifically

The jury's finding on liability appears straightforward, but it is not. Citing *Nadaf-Rahrov*, Defendant argues Plaintiff's interactive process claim fails because, once she sued Costco, Plaintiff did not discover any reasonable, available accommodation she could have asked for, but did not know to ask for, at the time of her employment.[6] Defendant concludes it must prevail, as a matter of law, on Plaintiff's interactive process claim for Plaintiff's failure to present evidence of any theoretical accommodations. Defendant explains that, in the absence of theoretical accommodations, Plaintiff's requested accommodations of remote work and protocol distribution cannot sustain her interactive process claim. Defendant supplies two reasons here: (1) the jury found for Costco on her reasonable accommodation claim, thus indicating Plaintiff was either granted those accommodations or not entitled to them for their unreasonableness, and (2) *Nadaf-Rahrov* precludes this Court from considering evidence relating to any accommodation Plaintiff requested as a Costco employee, which includes her remote work and protocol distribution requests. The latter point is the niche issue on which the Court's analysis here turns, as it will determine what evidence this Court may, and may not, consider to ultimately resolve Defendant's Motion for JMOL. The relevant excerpt from *Nadaf-Rahrov* reads as follows:

/ / /

/ / /

---

[6] For ease of comprehension, the Court refers to such accommodations – ones that (1) an employee did not request during her employment; (2) she discovered only after suing her employer; (3) are reasonable; and (4) were available during the relevant time period of her employment – as "theoretical accommodations."

> Where a necessary accommodation is obvious, where the employee requests a specific and available reasonable accommodation that the employer fails to provide, or where an employer participates in a good faith interactive process but fails to provide it, a plaintiff may sue under section 12940(m). Section 12940(n), which requires proof of failure to engage in the interactive process, is the appropriate cause of action where the employee is unable to identify a specific, available reasonable accommodation while in the workplace and the employer fails to engage in a good faith interactive process to help identify one, but the employee is able to identify a specific, available reasonable accommodation through the litigation process. In short, the two causes of action address different factual circumstances.

*Nadaf-Rahrov*, 166 Cal.App.4th at 983. The excerpt directs a plaintiff to choose between two types of FEHA claims: (1) if she made any specific request for accommodation during her employment, she should pursue a reasonable accommodation claim under section 12940(m) of the FEHA; or (2) if she made no such request during her employment, but later learns at least one reasonable accommodation was available during her employment, then she should pursue an interactive process claim under section 12940(n) of the FEHA. *Id.*

The California Supreme Court has yet to weigh in on whether *Nadaf-Rahrov* has it right on this point. Under such a circumstance, this Court, sitting in diversity, is bound by *Nadaf-Rahrov* unless there exists convincing evidence the California Supreme Court would likely not follow it. *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007); *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001) (quoting *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996) ("'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'")). The Ninth Circuit has made clear "[where] the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court could resolve it." *Hayes v. County of San Diego*, 658 F.3d 867, 872 (9th Cir. 2011) (citing *Westlands Water*

*Dist. v. Amoco Chemical Co.*, 953 F.2d 1109, 1111 (9th Cir. 1991) (quoting *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989).). Importantly, disagreement amongst federal district courts is not a proper basis for departing from a state's intermediate appellate court decision. *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1070 (9th Cir. 2020) (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2015) (recognizing we "must adhere to state court decisions—not federal court decisions—as the authoritative interpretation of state law.").

The Court does not read *Nadaf-Rahrov* as a limit on the FEHA claims a disabled employee may bring, as Defendant wills it to. When viewed in context rather than a vacuum, the excerpt demonstrates *Nadaf-Rahrov*'s alignment with the FEHA and the California Legislature's aim "to safeguard the right and opportunity to all persons to seek, obtain, and hold employment without discrimination" and "to provide effective remedies that will eliminate… discriminatory practices." *Nadaf-Rahrov*, 166 Cal.App.4th at 980 (citing *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir.1997) and Cal. Gov. Code. § 12920.). Prefacing the excerpt, *Nadaf-Rahrov* explains "if a failure to provide accommodations is a consequence of a[n] [interactive process] violation, we see no reason why a plaintiff could not recover damages for that failure to accommodate even if the plaintiff prevailed only on an [interactive process] claim." *Id*. at 983. The dependent clause of the statement implies an employer's failure to accommodate and failure to engage in the interactive process can coexist. The independent clause brings that implication into focus. To paraphrase: a plaintiff can indeed bring both a reasonable accommodation claim and an interactive process claim and, even if she loses on the former claim, she can prevail on the latter claim and recover damages.

Further, *Nadaf-Rahrov* added "the availability of a reasonable accommodation… is necessary to an [interactive process] claim." *Id*. at 983. Accordingly, to prevail on an interactive process claim, a plaintiff must first establish at least one reasonable

accommodation existed during her employment.[7] This evidentiary showing is common to establishing a reasonable accommodation claim. *Id*. at 212 (concluding "an employer is liable… for failing to accommodate an employee only if the work environment could have been modified or adjusted in a manner that would have enabled the employee to perform the essential functions of the job."). Thus, *Nadaf-Rahrov* draws upon more commonality between a reasonable accommodation claim and an interactive process claim.

*Nadaf-Rahrov* ultimately determined plaintiff's reasonable accommodation claim and interactive process claim both survived summary judgment. *Id*. at 978 ("Therefore,

_____

[7] Plaintiff relies on *Wysinger* to argue an employee need not prove the availability of a reasonable accommodation to establish liability on her interactive process claim. Not so. *Wysinger* found jury verdicts in favor of the employer on a reasonable accommodation claim and in favor of the employee on his interactive process claim were not inconsistent. *Wysinger v. Automobile Club of Southern California*, 157 Cal.App.4th 413, 424 (2007). This finding does not permit the leap Plaintiff seeks to make. *Wysinger* explained "an employer may claim there was no available reasonable accommodation. But if it did not engage in a good faith interactive process, "it cannot be known whether an alternative job would have been found. The interactive process determines which accommodation is required. Indeed, the interactive process could reveal solutions that neither party envisioned." *Id*. at 424-425 (concluding "here the jury could find there was no failure to provide a required accommodation because the parties never reached the stage of deciding which accommodation was required. [The employer] prevented this from happening by its refusal to engage in the interactive process") [internal citations omitted].). Moreover, Ninth Circuit authority has routinely found at least one reasonable accommodation must exist to sustain an interactive process claim in both FEHA and ADA cases. *Alamillo v. BNSF Ry. Co.*, 869 F.3d 916, 922 (9th Cir. 2017) (citing *Scotch v. Art Institute of California*, 173 Cal.App.4th 986, 923 (2009) (FEHA); *Carballo v. Comcast, Inc.*, 690 F. App'x 1006, 1008 (9th Cir. 2017) (FEHA); *Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 (9th Cir. 2006) (ADA); *Salgado v. Iqvia, Inc.*, 459 F. Supp. 4d 1318, 1333 (S.D. Cal. May 8, 2020) (citing *Nealy v. City of Santa Monica*, 234 Cal.App.4th 359, 379 (2015) (FEHA); *Chisolm v. 7-Eleven*, Inc., 383 F. Supp. 3d 1032, 1058 (S.D. Cal. May 23, 2019), aff'd, 814 F. App'x 194 (9th Cir. 2020) (FEHA). *Wysinger* is inapposite to *Nadaf-Rahrov* and presents no conflict. *See Scotch*, 173 Cal.App.4th at 995 (reconciling *Wysinger*, *Nadaf-Rahrov*, and *Claudio v. Regents of Univ. of Cal.*, 134 Cal.App.4th 224 (2005) and opining the FEHA requires employees to identify a reasonable accommodation available at the time the interactive process should have occurred).

there is a triable issue about whether Neiman Marcus failed to reasonably accommodate [plaintiff] by reassigning her"); *id*. at 986 ("a reasonable jury could find Neiman Marcus caused a breakdown in the interactive process by refusing to provide information about available positions…" despite that plaintiff was granted medical leave); *id*. at 985 (*citing Spitzer v. The Good Guys, Inc.*, 80 Cal.App.4th 1376, 1388, 1390 (2000) and *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952-953 (8th Cir. 1999) (both stating liability on an interactive process claim may exist even where employer provided some accommodation, but the accommodation was ineffective).

When considering this conclusion, the Court finds it untenable to read *Nadaf-Rahrov* in the restrictive manner Defendant urges. A restrictive reading would punish the employee who diligently explores possible accommodations and provides an exhaustive list of accommodation requests to their employer. Defendant would have such an employee, if wronged, pursue only a reasonable accommodation claim, rather than both reasonable accommodation and interactive process claims, and thereby limit recovery. That directive contradicts *Nadaf-Rahrov*'s clear-eyed statement that "if a failure to provide accommodations is a consequence of a[n] [interactive process] violation, we see no reason why a plaintiff could not recover damages for that failure to accommodate even if the plaintiff prevailed only on an [interactive process] claim." *Id*. at 983.

Further, *Nadaf-Rahrov* makes clear its intent to honor the FEHA's bedrock principle to expand employee rights, rather than curb the right to pursue remedies for perceived disability discrimination at work. A more synchronous interpretation of the excerpt is that *Nadaf-Rahrov* attempted to provide a way forward in litigation for plaintiffs who may not have thought to request a specific accommodation while employed – precisely because an accommodation was not obvious or their employer did not implement an accommodation because one was never offered in the first place. *Nadaf-Rahrov*'s aim sharpens in its acknowledgment that the goal of the interactive process is to ultimately "identify an accommodation that allows the employee to perform the job effectively." *Id*. at 984.

Accordingly, although the California Supreme Court has not weighed in on the binary the *Nadaf-Rahrov* excerpt presents, the Court finds the excerpt, as interpreted by Defendant, is inconsistent with *Nadaf-Rahrov* as a whole, Ninth Circuit precedent interpreting the FEHA[8], and the FEHA's plain language[9]. To that point, Defendant has also not cited to a single case vindicating its narrow reading of the excerpt. The Court has scoured the applicable authority on the matter and has found no salvation for Defendant.

_____

[8] *See Villalobos v. TWC Administration LLC*, 720 Fed.Appx. 839 (9th Cir. 2017) (reversing district court's decision granting summary judgment for employer on employee's interactive process claim where employee made specific accommodation request and employer failed to exhaustively address the request); *Cervantes v. Transdev Services, Inc.*, 2021 WL 5513512 at *5 (S.D. Cal., Oct. 4, 2021) (same result, explaining "although [the employer] was responsive, it has not met its burden at this point of showing plaintiff had no evidence of reasonable accommodations available at the time of the interactive process" and citing to evidence of the employer failing to discuss plaintiff's accommodation request or explaining why it could not grant the request).

[9] Sub-section (n) of the FEHA plainly states: "It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:… (n) For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov. Code § 12940(n). The sub-section does not impose any requirement for specificity from the employee when requesting an accommodation. Given the lack of such a requirement, the Court finds the FEHA is clear and unambiguous that an employee's unqualified request for accommodation suffices to establish liability for purposes of her interactive process claim, where the employer is aware of her disability and accommodation request and fails to engage in a good faith, interactive process. *See West Pacific Electric Company Corporation v. Dragados/Flatiron*, 534 F.Supp.3d 1209, 1228 (looking to "compelling" plain language of the California statute, whose interpretation the parties disputed and that was not yet resolved by the California Supreme Court, and citing *MCI Communications Services, Inc. v. California Dept. of Tax & Fee Administration*, 28 Cal.App.5th 635, 643 (2018) for proposition that the "statute's words generally provide the most reliable indicator of legislative intent; if they are clear and unambiguous, '[t]here is no need for judicial construction and a court may not indulge in it.'").

Having so concluded on this niche legal issue, the Court shall consider each of the accommodations Plaintiff requested during her employment and Costco's response in resolving Defendant's Motion for JMOL as to the jury's liability finding.

### 2.  Defendant's Factual Premises

The Court now turns its attention to two factual premises on which Defendant stakes its case. The first premise is that the interactive process began in January 2019, and not any time sooner. The second premise is that Plaintiff only requested two accommodations during her employment, namely remote work and protocol distribution. The Court addresses each premise before unpacking its analysis.

### a.  The Relevant Time Period

The duty to engage in the interactive process is triggered once an employer "becomes aware of the need to consider an accommodation." *Scotch*, 173 Cal.App.4th at 1013; *Nadaf-Rahrov*, 166 Cal.App.4th at 974. "Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, ... the initial burden rests primarily upon the employee ... to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Scotch*, 173 Cal. App. 4th at 1013 (citing *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir.1996).). According to Defendant, the interactive process began in January 2019 when Plaintiff first submitted a doctor's note indicating she required accommodation. Defendant explains that, prior to such time, Plaintiff never provided notice she had anxiety specific to traveling to Mexico. Plaintiff staunchly disagrees, arguing she notified Costco of her anxiety relating to traveling to Mexico as early as 2009.

Judge Curiel forecast this notice issue in his Order on Defendant's Motion for Summary Judgment: "While Defendant claims it did not know about [Plaintiff's] disability until the doctor's note in January 2019, Plaintiff has presented evidence Defendant knew about Plaintiff's disability years before 2018 and has generated a genuine dispute of material fact as to when the duty to engage in the interactive process was triggered." (Doc.

No. 30., 27:19-27.) The evidence Judge Curiel cited in his Order was not a relic left behind on summary judgment.

The trial record yielded testimony that a jury could reasonably conclude showed Costco knew about Plaintiff's travel-specific anxiety years before January 2019. At trial, Plaintiff testified she first raised safety concerns about traveling to Mexico in 2009 and that her reply to Mantanona's 2018 email reflected the same. (Trial Tr. at 1490:5-7; Doc. No. 21-5, D's App'x, Ex. 8 at 282-283; *id.*, Ex. 14 at 302-303.) At trial, Daleo testified she learned Plaintiff suffered from anxiety "immediately" when Plaintiff became a Buyer in 2007. (*Id.* at 253:3-9.) Daleo also testified Plaintiff first requested safety precautions for traveling to Mexico sometime between 2009 and 2010. (*Id.* at 280:24-281:5.) Daleo specified she was aware, at such time, that Plaintiff feared traveling to Mexico due to increased crime targeting business travelers and believed "Costco was not providing her or other employees with adequate safety protections when traveling to Mexico." (*Id.* at 279:21-280:3, 280:16-19.) Daleo added the two had "weekly" discussions about Plaintiff's concerns. (*Id.* at 282:810, 18-22.) Thus, Daleo's testimony reasonably establishes her notice of Plaintiff's travel-specific anxiety materialized as early as 2009 or 2010.

Mantanona's testimony at trial contradicted Plaintiff and Daleo's. At trial, Mantanona testified he first learned Plaintiff suffered from anxiety in January 2019. (Doc. No. 102, 877:8-13.) In the same breath, Mantanona stated Plaintiff's travel concerns "only … ever came up" in an August 2018 meeting after he denied Plaintiff's request to travel to New York for a trade show because she had not yet booked a trip to Mexico. (*Id.*, 881:5-18; 885:5-16.) Mantanona also testified that, about three months later, in a November 8, 2018, meeting revisiting Plaintiff's travel-related concerns, Plaintiff was "visibly upset" and asked him if he had ever had his "hands or arms held down by a man." (*Id.*, 889:8-11.) Mantanona also testified that, in October 2018, Daleo shared that Plaintiff was concerned about traveling to Mexico and "that was the first time [he] had heard anything about the SOS program being a big concern." (*Id.*, 904:2-15.) Thus, Mantanona's additional testimony placed his knowledge of Plaintiff's travel-related anxiety as early as August of

2018. Mantanona's credibility on the date he was first on notice of Plaintiff's travel-related anxiety is not for the Court to decide. Instead, the Court must draw all inferences in favor of Plaintiff. In doing so, the Court finds Daleo and Plaintiff's testimony establishes substantial evidence Costco was aware that Plaintiff not only had generalized anxiety but also had specific anxiety related to traveling to Mexico as early as 2009.

### b. Plaintiff's Requested Accommodations

As noted, Defendant contends that, at trial, Plaintiff presented evidence of only two accommodations she requested as a Costco employee, namely remote work and protocol distribution. Defendant reiterates this point throughout its Motion, but reiteration does not transform a representation into a fact. Indeed, the uncontroverted evidence at trial revealed two other accommodation requests Plaintiff made as a Costco employee, namely (1) group travel and (2) reassignment to an equivalent role. (Trial Tr. at 1514:5-24; Doc. No. 103, 1247: 14-24; *see also* Doc. No. 23-1, P's Response to D's SSUF, No. 13; Doc. No. 23-3, Gruenberg Decl., Ex. 1, Martinez Dep. at 140:16-144:19.) Defendant's omission of these additional two accommodation requests is not well taken. Plaintiff's interactive process claim necessarily implicates all of her accommodation requests and Defendant's response to each request. The Court cannot adjudicate Defendant's Motion without consideration of the entirety of the record, including the two other accommodation requests Plaintiff made. The Court declines to overlook evidence as Defendant has[10] and now deals with Defendant's Motion as to its liability on Plaintiff's interactive process claim.

/ / /

/ / /

/ / /

/ / /

---

[10] To the extent some good-faith reason exists to explain its omission of material fact, Defendant's Motion fails to imply or explicitly state such reason.

27

### 3. Analysis of the Jury's Verdict on Plaintiff's Interactive Process Claim

#### a. Costco Witnesses' Admissions of Not Participating in an Interactive Process

The Court holds substantial evidence supports the jury's finding of liability on Plaintiff's interactive process claim. Specifically, the Court finds that, although Plaintiff was granted medical leave, the trial record is laden with evidence to show Costco failed to engage in a continuous, good faith interactive process to identify any reasonable accommodations that would allow her to do her job. *Matkovich v. Costco Wholesale Corp.*, 2016 WL 11668973 (C.D. Cal. Sept. 13, 2016) (denying summary judgment for employer on employee's interactive process claim where employer placed the employee on a leave of absence "without considering whether the accommodations that were in place for the previous two years would enable plaintiff to perform the job effectively" and citing to evidence that employer 'did not consider continuing to accommodate Matkovich on a temporary basis.'"); *see also Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 261 (2000) (noting a leave of absence can constitute a reasonable accommodation 'where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future.'"). As a threshold matter, Costco's own witnesses made repeated admissions at trial they took no part in the interactive process. Some of those admissions were express and came from Weber, a human resources executive, as well as Plaintiff's supervisors. (Trial Tr. at 1147:8-10, 1148:7-12).

Although Weber was a high-ranking member of human resources at Costco and was not involved in investigating possible accommodations for Plaintiff, Weber knew Plaintiff complained against Mantanona for retaliation surrounding her accommodation requests. Despite being aware of the contention between Plaintiff and Mantanona about Plaintiff's fear of traveling to Mexico and need for accommodation, Weber explicitly stated she was not involved in the interactive process. (*Id.* at 1147:8-10, 1148:7-1:13-18, 1151:24-1152:3.) Emphasizing the point, Weber explained Schmertzler ultimately reported to her

and that she knew Schmertzler was charged with finding possible accommodations for Plaintiff. (*Id*. at 1153:12-20.) Even so, Weber conceded she did not know any of the steps Schmertzler took to determine possible accommodations for Plaintiff. (*Id*. at 1151:24-11:52-3, 1152:11-15, 1153:12-20.)

Moreover, in concluding her own investigation of Plaintiff's retaliation complaint and after speaking with Plaintiff just one time, Weber seemingly closed the door on discussing the travel requirement, advising "the matter of travel to Mexico as a requirement is decided and will not be revisited further." (*Id*. at 1171:3-11; Doc. No. 103, 1208:13-18.) Interpreting the evidence in Plaintiff's favor, Weber did no favors for Costco on Plaintiff's interactive process claim. Neither did Schmertzler, whose testimony will be separately addressed in the next sub-section of this Court's discussion, nor Mantanona.

As to Mantanona, he similarly admitted at trial that he did not take part in the interactive process responsive to Plaintiff's requests for accommodation. Specifically, Mantanona admitted the only reason he decided to place Plaintiff on medical leave was because she was not traveling to Mexico and, relatedly, that he never explored any ways Plaintiff could continue performing her duties as a Buyer without going to Mexico. (Doc. No. 102, 933:5-21.) Mantanona also admitted that, in his discussions with Weber and Schmertzler, neither of them ever indicated they were including him in an interactive process and, beyond semantics, that he never participated in a conversation with them about what accommodation could be made for Plaintiff. (*Id*., 937:7-11, 937:17-938-1.) In fact, Mantanona testified he never had any discussions with anyone at Costco about how Plaintiff could be accommodated. (*Id*., 938:18-20.) Daleo's testimony echoed Mantanona's. She testified that she and Mantanona never discussed how Plaintiff could be accommodated consistent with Plaintiff's work restrictions. (Trial Tr. at 466: 2-5.)

### b. Costco's Default Decision to Place Plaintiff on a Leave of Absence

Schmertzler's testimony at trial about her involvement in the interactive process was less glaring than Weber, Mantanona, and Daleo's. Nonetheless, Schmertzler's testimony

provides substantial evidence supporting the jury's finding of liability on Plaintiff's interactive process claim. At trial, Schmertzler explained her role at Costco was to provide guidance on reasonable accommodations, but that the ultimate decision on how to approach such issues was reserved for local managers to decide. (Doc. No. 102, 958:12-20.) Accordingly, when Mantanona and Miller decided Plaintiff should be placed on leave, Schmertzler's role was simply to relay their decision to Plaintiff. (Trial Tr. at 1045:20-1046:5, 1112:22-1113:8, 1114:18-25.) In itself, the framework in which Schmertzler operated suggested it did not lend itself to a robust interactive process. Schmertzler's additional testimony confirmed the same.

Schmertzler made other admissions at trial that a jury could reasonably construe as Costco's shortcomings in engaging with Plaintiff in an interactive process. Schmertzler explained that, like Weber, she spoke with Plaintiff just once. (Doc. No. 102, 953:22-954:13.) That fact alone does not bear well for Costco, considering that the interactive process is a continuous one until a reasonable accommodation, if one exists, is identified that allows the employee to perform the job effectively. *Villalobos*, 720 Fed.Appx. at 843 (citing *Humphrey*, 239 F.3d at 1138.); *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 799 (N.D. Cal. July 14, 2015). In doing so, Schmertzler admitted she did not ask Plaintiff about her job duties to determine whether she could fulfill them without going to Mexico. (*Id.*, 967:22-968:1.) In responding to Plaintiff's requests for accommodation, Schmertzler also spoke to Mantanona and reviewed documents. (Doc. No. 102, 953:22-954:13.)

Schmertzler also conceded she was aware the next group trip to Mexico that Plaintiff could go on was in March or April of 2019, and that Plaintiff never refused to go on such a group trip. (Trial Tr. at 1040:22-1041:5, 1046:6-10, 1052:4-6.) Schmertzler understood Plaintiff wanted confirmation of the travel safety protocols in writing, but Schmertzler admitted she did not ask Mantanona about protocol distribution to any extent. (*Id.* at 1053:2-20, 1056:8-17.) Instead, Schmertzler emailed Plaintiff to reiterate the travel requirement Mantanona impressed and inform Plaintiff she would be placed on a six-month, unpaid leave of absence. (*Id.* at 1112:22-1113:8, 1114:18-25.) From this set of facts,

a jury could reasonably find Schmertzler acted more as a talking piece for Mantanona than a participant in a good faith interactive process. Based on this portion of the record, Schmertzler evidently did not see a point in facilitating a discussion between Mantanona and Plaintiff that would allow Plaintiff to meet the travel requirement in line with Plaintiff's request for protocol distribution.

Given the above, there is substantial evidence that Schmertzler's handling of her part of the interactive process fell short of an ongoing and good faith effort. Participating in one phone call with Plaintiff can be reasonably interpreted as the start of a meaningful discussion, rather than the beginning and end of one. Schmertzler's remaining communications in writing to Plaintiff can also be reasonably interpreted as acquiescence to Mantanona and Miller's decisions to place Plaintiff on a leave of absence, rather than as a collaborative effort to bridge the gap between Plaintiff's work restrictions and Costco's business needs. Certainly, Schmertzler's admissions reveal she did not propose accommodations to Plaintiff aside from a leave of absence or, when speaking with Mantanona, facilitate a dialogue to understand whether there was flexibility in his and Miller's position. There was none, as Mantanona's August 2018 email and November 2018 memorandum indicated.

As *Nadaf-Rahrov* and the cases to which it cites teach, "the fact that an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability under section 12940(n). If the employer is responsible for a later breakdown in the process, it may be held liable." *Nadaf-Rahrov*, 166 Cal. App. 4th at 985 (citing *Spitzer*, 80 Cal.App.4th at 1388, 1390 and *Fjellestad*, 188 F.3d at 952–953). Thus, while an employee is not entitled to her preferred accommodation, an employer may not bow out of the interactive process by granting one type of accommodation – such as a leave of absence – when other accommodations may exist and allow the employee to perform her job more effectively. *Yeager v. Corr. Corp. of Am.*, 944 F. Supp. 2d 913, 919 (E.D. Cal. 2013).

There is substantial evidence in the record to show that Costco's default position in addressing Plaintiff's accommodation requests was to place Plaintiff on leave; the alternative option was for Plaintiff to comply with the travel requirement. Specifically, Mantanona and Miller preferred to place Plaintiff on leave despite admitting they did not explore alternative ways to accommodate Plaintiff. (Trial Tr. at 787:17-19.) Miller admitted he had no understanding of what, if any, burden Costco would incur if it granted Plaintiff's remote work request for six months; no one at Costco raised the matter to him. (*Id*., 786: 18-21.) Indeed, an assessment of Costco's business hardship would have been in order. Had management assessed and communicated the hardship Costco would have incurred as to each of Plaintiff's accommodation requests, perhaps a more nuanced and interactive discussion could have taken place and yielded a solution for both Costco and Plaintiff. *Cervantes*, 2021 WL 5513512 at *5 (citing *Swanson v. Morongo Unified School Dist.*, 232 Cal.App.4th 954, 971 (2014) (denying summary judgment for employer on employee's interactive process claim where employer failed to show that granting the employee's specific accommodation request would impose an undue hardship on the workplace).). By Miller's admission, as well as others, including Schmertzler and Weber, Costco did not do that. During trial, Daleo testified she disagreed with Costco's decision to place Plaintiff on leave, explaining she "believed there was a better way to work through th[e] situation." (Trial Tr. at 474:12-15.) Daleo maintained this belief until Plaintiff's resignation, when she testified she "felt the situation could have been handled better and differently." (*Id*. at 478:5-11.)

In itself, Mantanona and Miller's directive – to travel or else be placed on leave – can be construed as an ultimatum that Plaintiff would only be permitted to do her job if she fulfilled the very requirement that caused her to request accommodation; that, or, as she testified: "I could have stayed on leave and gotten full pay and been sitting at home while my team suffered and Michelle and Julie suffered. Yes, I could have stayed at home and gotten paid, but that would not have done anybody any good." (Trial Tr. at 1581:14-17.) Even so, as he admitted at trial, Mantanona did not participate in the interactive process or

otherwise attempt to explore accommodations that would allow Plaintiff to continue to work as a Buyer. (Doc. No. 102, 933:5-21, 937:7-11, 937:17-938:1, 938:18-20.) Daleo similarly testified she and Mantanona never discussed how Plaintiff could be accommodated consistent with Plaintiff's work restrictions. (Trial Tr. at 466: 2-5.)

While Costco evidently preferred placing Plaintiff on leave over exploring other accommodations, the law's preference is clear: that employers engage in an ongoing, continuous, good faith interactive process until an available accommodation is identified that permits the employee to not only do her job, but to do it effectively. *Cervantes*, 2021 WL 5513512 at *5 (citing *Yeager*, 944 F. Supp. 2d at 919); *Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1096 (E.D. Cal. Jan. 11, 2017) ("Unlike the ADA, however, [the] FEHA does not provide employers complete autonomy in choosing which reasonable accommodation, when there are more than one, to offer an employee") (citing Cal. Code Regs. tit. 2, § 11068(c) and *Wallace v. Cty. of Stanislaus*, 245 Cal.App.4th 109, 134 (2016) for proposition that "when an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence."). Staying at home, as Plaintiff testified, would not have permitted her to do any part of her job. Moreover, there was evidence presented at trial that the possibility of reassignment existed, but Costco did not meaningfully explore it or present it to Plaintiff.

The Court anticipates Costco will staunchly dispute the only accommodation it provided was a leave of absence, given that its Motion for JMOL presumes the jury considered Plaintiff's requests for remote work and protocol distribution and found for Costco on Plaintiff's reasonable accommodation claim on such basis. The Court will not indulge Costco's presumptions because, even if the Court accepts them as true, there is substantial evidence to show Costco failed to engage in the interactive process on Plaintiff's request for reassignment – a matter to which the Court will later turn.

As to remote work, it is undisputed Defendant denied remote work as an accommodation of Plaintiff's anxiety. But Costco's conclusion that the "evidence amply

supports the jury's finding that excusing her from travel to Mexico permanently or for six months was not a reasonable accommodation" is less than certain. The evidence is clear Costco granted Plaintiff a leave of absence, which is a type of accommodation. The remote work accommodation Plaintiff sought – which Costco denied – is not as easily construed as an unreasonable accommodation request that warranted the jury's reasonable accommodation verdict for Costco. This is because the trial record was rife with Daleo and Mantanona's admissions that Plaintiff performed her job well despite not meeting the travel requirement for 12 years. Moreover, Miller and Plaintiff both offered testimony indicating the travel requirement was "loosely" enforced prior to Miller's transition to Costco, thus providing the jury with at least some evidence that traveling to Costco was not always as essential as Costco's counsel argues it was. For this reason, the Court cannot make the definitive conclusion Defendant does that the jury found Plaintiff's request for remote work unreasonable.

As to protocol distribution, the Court is more inclined to accept Defendant's position there was sufficient evidence to support a finding by the jury it had satisfied Plaintiff's request for protocol distribution, although it still declines to engage in such conjecture under the standard governing Rule 50(b) motions. Plaintiff testified the protocols in the email Miller showed her would have sufficed for her to travel to Mexico had they been distributed. (*Id.* at 1496:24-1497:1.) The jury could find at such point that Plaintiff was exalting form over substance; she knew Costco had prepared a list of safety protocols and reduced them to a writing, even if that writing was not precisely in the format Plaintiff preferred. Costco's November 2, 2018, meeting amongst all Buyers lends support to this interpretation, as, during that meeting, Buyers were provided handouts of materials covering travel safety protocols for Mexico. (Doc. No. 103, 1259:9-11, 16-19.) Plaintiff missed the meeting and thus did not receive a copy of the handouts. (*Id.* at 1259:12-23.) At such point, a reasonable jury could conclude Plaintiff had written confirmation of the safety protocols and actual knowledge those written protocols were distributed to Buyers for Mexico, thus satisfying her request for protocol distribution.

On the other hand, as Costco's Motion for JMOL acknowledges and the trial record shows, the travel safety protocols were not published to Costco's intranet until February 2019. Leading up to the protocols' publication on the intranet, Plaintiff sought written confirmation of the travel safety protocols and articulated her request to Schmertzler as a condition of traveling in a group to Mexico in March or April of 2019. Schmertzler asked Mantanona about protocol distribution, who informed Schmertzler the protocols were conveyed verbally. Schmertzler then admitted she did not follow up with Mantanona to ask if the protocols could be reduced to writing and distributed to the Buyers to meet Plaintiff's protocol distribution request. Thus, the jury could have reasonably considered Costco's response to Plaintiff's request for protocol distribution as inadequate, simply because Costco had an opportunity to memorialize and distribute the protocols to Buyers in writing when Plaintiff asked, but Schmertzler did not bother to approach Mantanona about the request.

Even assuming Costco is right that Plaintiff's sole and exclusive accommodation requests were remote work and protocol distribution, the Court finds the jury's verdicts on Plaintiff's reasonable accommodation claim and interactive process claim are consistent and, likely, the result of the jury's reasonable but lay interpretation of the jury instructions. *Poulos v. City of Los Angeles*, 2022 WL 17072884, at *5 (C.D. Cal. Sept. 30, 2022) (citing Ninth Circuit's *Floyd* decision, 929 F.2d at 1396); *Ramirez v. Towe*, 2017 WL 11648982, at *8 (C.D. Cal. July 10, 2017) (same). As a threshold matter, a reasonable accommodation claim and an interactive process claim are independent, rather than derivative, claims. *Moore v. Pet Supermarket, Inc.*, 2014 WL 6634224, at *8 (E.D. Cal. Nov. 21, 2014) (citing *A.M. v. Albertsons, LLC*, 178 Cal.App.4th 455, 464 (2009) ("The failure to accommodate and the failure to engage in the interactive process are separate, independent claims involving different proof of facts."); *Wysinger*, 157 Cal.App.4th at 424, etc.). Defendant's Motion for JMOL is less than clear on this legal distinction and, at times, even implies the

two claims necessarily rise and fall together.[11] Legal precedent spanning nearly two decades has thus grappled with the same challenge before this Court: reconciling a jury's findings for the employer on a reasonable accommodation claim and for the employee on an interactive process claim. As discussed already, *Wysinger* dealt with the issue in 2007, and found no inconsistency. More recently, in 2016, the Central District Court addressed the matter in a FEHA action. In *Perona*, the court wrote:

> The jury's [negative] factual finding in Question 12 ["Did Time Warner Cable fail to provide reasonable accommodation for Katrina Perona's physical condition"] can be reconciled with the determination of liability as to the Plaintiff's interactive process claim… Here, the jury could have found that while TWC initially provided Plaintiff with a reasonable accommodation when it gave her paid leave, it failed to continue to engage in the interactive process with Plaintiff when it became clear that some different accommodation would be necessary… it [is] possible to read the inconsistency TWC identifies another way – as an indication that the jury improperly found ***against*** Plaintiff on her reasonable accommodation claim. If anything, it seems that the jury read Question 12 to ask whether TWC ***ever reasonably accommodated Plaintiff, not whether it exhausted all possible reasonable accommodations…***

*Perona v. Time Warner Cable*, 2016 WL 8941101 at **3-4 (C.D. Cal. Dec. 6, 2016) (emphasis added). The court added, "the award of non-economic damages bolsters this theory, as it indicates the jury considered the angst Plaintiff experienced while trying and failing to negotiate a reasonable accommodation with TWC to be worthy of compensation." *Id*. at *4. On appeal, the Ninth Circuit affirmed the district court's finding in favor of plaintiff on her interactive process claim. *Perona v. Time Warner Cable, Inc.*, 724 F. App'x 595, 596 (9th Cir. 2018) (commenting, "the jury also heard evidence Ms.

---

[11] In the September 30, 2022, hearing on Defendant's Motion, the Court expressly asked Defendant to clarify its implication throughout briefing. Defendant acknowledged the two causes of action are independent. (Doc. No. 143, 1-11.)

Perona was amenable to at least attempting to work an afternoon shift, her medical expert would have considered authorizing such work, and that Human Resources Manager [] did no research to see if there were any available accommodations the company could provide. The verdict is not contrary to the evidence.").

*Perona* is illustrative of a dilemma that presents itself in jury trials in FEHA disability cases and provides a reasonable explanation for the jury's verdicts here. *See also Wysinger*, 157 Cal.App.4th at 525 ("'A verdict should be interpreted so as to uphold it and give it the effect intended by the jury…' Where special verdicts appear inconsistent, if any conclusions could be drawn which would explain the apparent conflict, the jury will be deemed to have drawn them" [internal citations omitted]).). As noted, it is undisputed Plaintiff was granted a leave of absence and the jury could have very well found that the leave – in and of itself – constituted a reasonable accommodation Costco provided. If the jury here interpreted the special verdict forms on Plaintiff's reasonable accommodations in the same manner as the *Perona* court suggests, the jury could have made an unintended, yet reasonable lay error in comprehending the jury instructions on Plaintiff's reasonable accommodation claim.

In other words, the jury could have found (1) Costco provided one reasonable accommodation in the form of granting Plaintiff medical leave but (2) failed to discuss any other reasonable accommodations with Plaintiff, exhaust those discussions with her, and ultimately decide on any and all of those additional reasonable accommodations. *Norris*, 191 F.3d at 1048 (quoting *Toner*, 828 F.2d at 512); *Floyd*, 929 F.2d at 1396 (stating district courts may even assume "the jury's lay understanding of a particular legal concept differs from the court's" when attempting to reconcile inconsistent verdicts). Reinforcing this likelihood is that the jury here found "by clear and convincing evidence that one or more officers, directors, or managing agents of Costco engaged in malicious, oppressive, or fraudulent conduct towards Ms. Martinez" and awarded Plaintiff punitive damages on such basis. (Doc. No. 117, 14.) Given these circumstances, that the Court must infer all evidence in Plaintiff's favor, and the robust trial record recounted above, the Court finds there is

substantial evidence to support and no basis to overturn the jury's finding of liability against Costco on Plaintiff's interactive process claim[12].

### c. Costco's Failure to Present Reassignment as a Possible Accommodation Available to Plaintiff during the Interactive Process

As noted, Defendant's Motion for JMOL entirely omits mention of Plaintiff's request for reassignment. Defendant appears to circumvent the matter by indicating Schmertzler reviewed the job bulletin and found no open and available positions for Plaintiff. But that is only one part of the evidence. The other part implicates Plaintiff's testimony, her expert, Deborah Reilly's, testimony, and key admissions from Schmertzler.

To preface, Mantanona's November 2018 memorandum instructed Plaintiff to take four weeks to decide whether she would comply with the travel requirement. As discussed, the memorandum specified that, if Plaintiff did not comply, she would have 60 days to find an open position or move to an ICS position, that would effectively demote her. In response to the memorandum, on November 8, 2018, Plaintiff asked Calhoun about potential openings in the U.S. buying department. (Trial Tr. at 1514:5-24.) On November 13, 2018,

---

[12] Defendant largely stakes its argument on JMOL on *Rios*, a 2009 unpublished decision from the California Court of Appeal. *Rios v. Int'l Seal. Co.*, 2009 WL 1805580 (Cal. Ct. App. 2009). The Court finds *Rios* unpersuasive for its lack of factual similarity to the instant case. Setting aside the "procedural conundrums created by a judgment based on a cause of action never pled," the appellate court examined whether *Rios* established any damages tied to an interactive process claim and answered "no." *Id*. at *2. The court explained "Rios never identified, even after completion of the litigation process, a reasonable accommodation available at the trial the interactive process would have occurred." *Id*. For this reason, the court opined it was appropriate to reverse the trial court's decision and enter judgment in the employer's favor as a matter of law. As discussed throughout the Court's Order here, *Rios*' factual circumstances do not mirror Plaintiff and Costco's, given that Plaintiff identified at least four possible reasonable accommodations, including reassignment, which was left unexplored by Costco, as discussed below. Accordingly, the Court is unmoved by *Rios*.

Calhoun responded there were no current openings amongst the buyer positions in her region. (*Id.* at 1516:25-1517:4.) At this point, Plaintiff's options dwindled to two: comply with the travel requirement without accommodation or face demotion. What she did not know, however, was that Costco had information she did not, from which a reasonable accommodation via reassignment could have materialized.

What Plaintiff did not know at that time was what her expert witness, Deborah Reilly, later learned and testified to at trial, namely that Costco could have temporarily placed Plaintiff in a Buyer position for the San Diego region because Sandy Keane ("Keane"), the Buyer for that region, was on leave when Plaintiff sought accommodation. (Trial Tr. at 685:8-13.) Reilly testified she concluded Costco failed to engage in the interactive process for, amongst other matters, failing to discuss and offer Keane's temporary vacancy to Plaintiff. (*Id.*) In her expert report, Reilly concluded Costco "fell below the standard of care in the human resources industry by failing to… take inventory of [Plaintiff]s skills to place [her] in some other temporary assignment or another permanent assignment anywhere in the entire organization…" (*Id.* at 682:8-17.) Specifically, as to reassignment, Reilly explained:

> The gist of this opinion is that if it's determined you've exhausted the – you've exhausted the interactive process, you've done it in good faith, and the employer says, 'There's no way we can implement any of these safety protocols that will alleviate your fears… If you're not going to accommodate her as a senior buyer in Mexico, then you look for other jobs throughout the entire organization where she could possibly be placed instead. And that's what I said that they failed to do… (*Id.* at 683:1-16.)

Reilly admitted it was not solely Costco's responsibility to search for suitable reassignments for Plaintiff; the responsibility was Plaintiff's as well. (*Id.* at 684:6-8.) However, Reilly added that Plaintiff "may not know of things that are going to be opening up that [Costco] do[es]. And one of the questions was, there's a senior buyer position that's opened, not in the Mexico region, but in the San Diego region where someone was on a

leave of absence that she could have temporarily filled…"  (*Id*. at 684:8-22.) Ultimately, Reilly concluded, "The company is in a position to know if there's other positions that might be opening up in the near future… only they know that. She doesn't know that. So those are things that they could explore with her during this continuing interactive process." (*Id*.)

At trial, Schmertzler did not recall participating in a discussion regarding the possibility of Plaintiff transferring to another location to avoid traveling to Mexico. (Trial Tr. at 1064:18-24.) Schmertzler instead looked at Costco's job bank and limited her search to the San Diego office rather than expanding it to include all Costco locations. (*Id*. at 1065:9-18.) At the time, Schmertzler was not aware Keane was out on leave, and that no one had filled her position. (*Id*. at 1065:19-1066:2.) Schmertzler testified no one, including Mantanona, disclosed those facts to her; she learned of them in deposition. (*Id*.) Schmertzler testified Keane's job had not been "listed as an open-and-available position that [Plaintiff] could be slotted into." (*Id*. at 1114:1-8.)

Mantanona knew Plaintiff sought accommodation for her travel-related anxiety and acknowledged that Daleo informed him Plaintiff was interested in a potential transfer to the San Diego region. Mantanona also admitted he never spoke with Calhoun about transferring Plaintiff, despite knowing Calhoun had the authority to authorize a transfer for Plaintiff. (Doc. No. 102, 918:11-18, 918:24-919:6.) Schmertzler was responsible for facilitating Costco and Plaintiff's interactive process, but she did not ask Mantanona about possible accommodations such as temporary reassignment. Calhoun appeared to be siloed from the discussion altogether, as her communication with Plaintiff began and ended the same day. Further, Mantanona failed to communicate the possibility of a vacancy to Schmertzler, Calhoun, and Plaintiff, all while Schmertzler was looking into possible accommodations which could have included reassignment and while knowing Plaintiff sought accommodation. Under these facts, the Court finds a jury could reasonably conclude Costco failed to discuss with and offer Plaintiff a temporary vacancy for a Buyer position

that did not require travel to Mexico. Such a conclusion would explain the jury's finding on liability on Plaintiff's interactive process claim.

Reinforcing the Court's conclusion on reassignment, Schmertzler testified Costco would fill Plaintiff's own position as a Buyer on a temporary basis while she was out on leave and, further, that Plaintiff's position would not have been listed as an "open and available position that someone else could have been slotted into." (Trial Tr. at 1114:13-22.) Considering this fact and that Schmertzler told Plaintiff there were no vacancies for her to fill based on the job bulletin at the time Keane was on leave, a jury could reasonably conclude Costco denied Plaintiff the opportunity to fill Keane's position when it failed to inform Plaintiff about the vacancy. The testimony indicates the vacancy existed despite that it was not advertised on the job bulletin, just as Plaintiff's vacancy existed and would be filled when she went on temporary medical leave. Accordingly, the Court finds there is substantial evidence to show a possible reasonable accommodation that Costco left unexplored.

### 4.  Analysis of the Jury's Compensatory Damages Award on Plaintiff's Interactive Process Claim

Defendant next argues substantial evidence does not support the jury's damages award on Plaintiff's interactive process claim. According to Defendant, Plaintiff is entitled to recover damages on this claim only if she demonstrated at trial that "she suffered [] emotional distress by Defendant's failure to engage in the process itself," which Defendant contends Plaintiff failed to do. (Doc No. 131, 14:21-23.) As addressed above, the Court agrees Plaintiff must tether her emotional distress to the interactive process itself to support a non-economic damages award on her interactive process claim. Concurrently, however, the Court disagrees with Defendant's representation that the trial record was bereft of such evidence. It was not.

Plaintiff testified at trial about how she perceived Costco was treating her during the interactive process and what emotional effect Costco's treatment had on her. In explaining her resignation, Plaintiff stated:

> "I felt like things were sta[r]ting to get really bad in regards to the way Steve Mantanona was treating me. I felt that I was being retaliated against for voicing my travel and safety concerns. At this point, on October 10th, I had not heard back from Steve Mantanona. He had not gotten back to me in regards to my safety requests or suggestions in regards to traveling in Mexico. And then he then says, 'Oh, well, going to the Tijuana and Ensenada locations and getting into Sam's Club down there is not actually going to count as traveling to Mexico…"

(Doc. No. 103, 1251:8-17.) Testimony such as this more than clearly conveys Plaintiff suffered emotional distress because of how Costco handled its part in the interactive process. Plaintiff's emphasis that she "had not heard back" from Mantanona is evidence of a failure to engage in the interactive process. Plaintiff tied Mantanona's non-responsiveness to feeling that she was being treated poorly. Plaintiff reiterated this sentiment throughout trial. (*Id.*, 1295:10-16; *see also id.* 13-24. [Plaintiff was "crying all the time" and very emotional and experienced insomnia and exacerbated anxiety after Mantanona denied her New York trip in 2018.]) The fact that such testimony overlaps with emotional distress relevant to Plaintiff's other causes of action does not diminish its pertinence to damages on Plaintiff's interactive process claim.

Daleo also testified that, upon Plaintiff's resignation, Plaintiff was "very upset, and she was not able to – to work in the circumstances as they had [a]risen regarding this situation…" (Trial Tr. at 477:2-10, 18-20.) In reference to "the situation," Daleo clarified it was about "how [Plaintiff] was treated by human resources" and "at [Costco's] corporate office" and that it made Plaintiff "emotional" and "tearful." (*Id.*) When asked if Plaintiff felt that way about "the entirety of the situation," Daleo responded affirmatively. (*Id.* at 47:13-15.) The Court finds Daleo's clarification of the "situation" encompassed "how [Plaintiff] was treated" by Costco's corporate office and human resources can reasonably

be construed to mean how Costco failed to engage in an interactive process, particularly because Schmertzler, Weber, and Miller were each assigned to those divisions within the Company. Despite Costco's unwillingness to acknowledge it, Daleo's testimony is relevant to Plaintiff's interactive process claim *in addition to* her reasonable accommodation and constructive discharge claims. These are parallel truths; they exist at the same time.

Dr. Lenkses' testimony can be similarly interpreted. He testified "Plaintiff was having severe work-related anxiety and felt that she was being retaliated against. She raised her concerns about safety issues with traveling to Mexico… and her employer had not met her minimum safety requirements." (Trial Tr. at 560:3-4.) The Court anticipates, as to this line of testimony, Defendant would object that it relates exclusively to Plaintiff's reasonable accommodation claim. But the Court need not apply that narrowed construction when viewing the testimony in a manner most favorable to Plaintiff. Dr. Lenskes also unpacked the emotional toll Plaintiff suffered as a Costco employee: "When we started talking about 'What happens if you do – if they don't make an exemption and you have to go down to Mexico,' and then she would get tearful and – and upset during those times." (*Id*. at 542:19-543:1.) Due to the overlapping factual and legal nature of Plaintiff's reasonable accommodation and interactive process claims, Dr. Lenskes' testimony reasonably conveys Plaintiff was emotionally distressed throughout the process of raising an accommodation request and ultimately being denied one.

The trial record, as discussed above, unveils substantial evidence to tether Plaintiff's emotional distress to Costco's failure to engage in a good-faith, interactive process with her. The Court will not substitute its opinion for that of the jury's considered judgment. The jury heard the evidence of Plaintiff's emotional distress and the arguments of her counsel suggesting what value the jury should give them. For this reason, the Court finds the jury's award of $850,000 for past non-economic damages is supported by substantial evidence and must stand. Separately, and for the same reasons, the Court finds the jury's award of $850,000 for future non-economic damages must also stand.

Defendant has cited no legal authority that would preclude a monetary judgment for future non-economic damages where an employee is found to have voluntarily resigned from employment but prevails on a sole, standalone FEHA claim. The Court has analyzed case law bearing on whether the jury's finding for Costco on Plaintiff's constructive discharge claim would preclude her from an award of future non-economic damages on her interactive process claim. Having done so, the Court finds no preclusive effect exists. Specifically, the legal authority does not preclude an employee from recovering "post-resignation" damages where the employee does not prevail – or even allege – a constructive discharge claim but she prevails on some other standalone FEHA claim. *Perona*, 2016 WL 8941101 at *8 (upholding jury's damages award in entirety on plaintiff's interactive process claim alone) (affirmed aff'd sub nom. *Perona v. Time Warner Cable, Inc.*, 724 F. App'x 595 (9th Cir. 2018); *Terry v. City of San Diego*, 2012 WL 216591, at *2 (S.D. Cal. Jan. 24, 2012) (stating "the Court ruled that California law permits an award of post-resignation damages for violations of FEHA irrespective of whether a plaintiff claims constructive discharge"); *see also Vega v. Honeywell Int'l, Inc.*, 2021 WL 1226483, at *20 (S.D. Cal. Mar. 30, 2021) (denying summary judgment for employer on employee's FEHA claims and commenting the employer "cites absolutely no authority indicating that damages are a necessary element for a constructive discharge cause of action."). Accordingly, the Court DENIES Defendant's Motion for JMOL on Plaintiff's compensatory damages award as to both her past non-economic damages award in the amount of $850,000 and her future non-economic damages award in the amount of $850,000.

### 5. Analysis of the Jury's Punitive Damages Award on Plaintiff's Interactive Process Claim

Lastly, Defendant argues substantial evidence does not support the jury's punitive damages award on Plaintiff's interactive process claim. Two reasons underlie Defendant's position, namely Plaintiff introduced no evidence at trial (1) regarding Defendant's

financial condition or (2) demonstrating Defendant acted with malice, fraud, or oppression during the interactive process. Plaintiff argues one point in her Opposition, namely that Defendant is precluded from raising a Rule 50(b) Motion on punitive damages because Defendant purportedly failed to bring a Rule 50(a) motion beforehand.

The Court soundly rejects Plaintiff's position for its lack of factual accuracy. Defendant made an oral motion under Rule 50(a) on June 6, 2022, which the Court denied that same day. (Doc. No. 128, 2068:1-9.) Thus, Defendant has met Rule 50(b)'s procedural requirement that a Rule 50(a) motion be first brought. Having so clarified, the Court agrees with Defendant on its point that Plaintiff's failure to introduce evidence of Defendant's financial condition at trial precludes an award of punitive damages.

Under California law, a court reviewing a punitive damages award considers three factors: (1) the reprehensibility of the defendant's misdeeds; (2) the relationship between the award and plaintiff's compensatory damages; and (3), in view of the defendant's financial condition, the amount necessary to punish the defendant and to deter future misconduct. *Viasphere Int'l, Inc. v. Vardanyan*, 2017 WL 1065191, at *4 (N.D. Cal. Mar. 21, 2017) (citing *Adams v. Murakami*, 813 P.2d 1348, 1350 (Cal. S. Ct. 1991) *(citing Neal v. Farmers Ins. Exchange*, 582 P.2d 980 (1978)); *Kelly v. Haag*, 52 Cal. Rptr.3d 126, 128 (Cal. Ct. App. 2006).). The third prong is pertinent to the Court's analysis here and implicates California Civil Code section 3295(c) ("Section 3295").

Section 3295 prohibits pretrial discovery about a defendant's financial condition unless a court enters an order permitting such discovery. Cal. Civ. Code § 3295(c). Federal courts have characterized Section 3295 procedural in nature because it "merely restricts when and how evidence of a defendant's financial condition is obtained." *Covarrubias v. Ocwen Loan Servicing, LLC*, 2018 WL 5914240, at *2 (C.D. Cal. June 21, 2018) (citing *Oakes v. Havlorsen Marine Ltd.*, 179 F.R.D. 281, 284-85 (C.D. Cal. 1998) ("[Section 3295] is part of a pervasive statutory scheme for the purpose of establishing procedures for pleading exemplary or punitive damages and obtaining information relevant to that*"); LL B Sheet 1, LLC v. Loskutoff*, 2016 WL 7451632, at *2 (N.D. Cal. Dec. 28, 2016)"[Section

3295] is procedural rather than substantive").). Accordingly, "the *Erie* doctrine precludes application of Section 3295 in federal court." *Hullinger v. Anand*, 2016 WL 7444625, at *1–2 (C.D. Cal. Oct. 12, 2016) (citing *Oakes*, 179 F.RD. at 285-286); *Salisbury v. Hickman*, 2013 WL 4402789, at *5 (E.D. Cal. Aug. 14, 2013) ("Section 3925 'is a state discovery and procedural law,' which establishes a discovery scheme fundamentally inconsistent with the discovery rules under the Federal Rules of Civil Procedure") [internal citations omitted]).).

The Federal Rules of Civil Procedure permit plaintiffs seeking punitive damages to discover their opponents' financial condition. Within the Ninth Circuit, a heavily cited-to case on the matter is *EEOC v. California Psychiatric Transitions*. *Id*., 258 F.R.D., 391, 394-395 (E.D. Cal. June 18, 2009). That case flagged that "the Ninth Circuit has not defined the parameters of the dissemination of financial information discovery when punitive damages are alleged." *Id*., at 394-395; *Klein v. City of Beverly Hills*, 2015 WL 13906841, at *2 (C.D. Cal. Apr. 23, 2015); *Lifschultz v. City of San Juan Capistrano*, 2020 WL 4342543, at *1 (C.D. Cal. June 23, 2020). The court then laid out the two existing approaches: (1) the majority approach, which entitles a plaintiff seeking punitive damages to discover the defendant's financial condition before trial without making a *prima facie* showing she is entitled to recover punitive damages; and (2) the countervailing approach, which requires a plaintiff to first allege specific facts to support her punitive damages claim. *Id*. (citing *U.S. v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (W.D. Ohio, 2001) (adopting majority approach); *EEOC v. Klockner H & K Machines*, 168 F.R.D. 233, 235–236 (E.D.Wis. 1996) (same); *EEOC v. Staffing Network*, 2002 WL 31473840 at *3–4 (N.D. Ill., Nov.4, 2002) (same); *Chenoweth v. Schaaf*, 98 F.R.D. 587, 589 (W.D. Pa. 1983) (adopting countervailing approach); *Roberts v. Shawnee Mission Ford., Inc.*, 2002 WL 1162438 at *2–3 (D. Kan. Feb.7, 2002) (same); *Vivino v. Everlast Sporting Goods Mfg. Co., Inc.*, 1987 WL 17571 (E.D. Pa. Sept. 28, 1987) (same).).

Given the Federal Rules' applicability to the discoverability of Costco's financial condition, the Court revisits the foundational rule that all fact discovery must be completed

within the deadlines set forth by the operative scheduling order as set forth by this Court. Fed. R. Civ. P. 16(b); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 2014); *see also E.E.O.C. v. Braun Elec. Co.*, 2014 WL 356998, at *5 (E.D. Cal. Jan. 24, 2014) (citing *U.S. E.E.O.C. v. Giumarra Vineyards Corp.* to note "the Court did not find this warranted disclosure of the financial information beyond the discovery deadline" in connection with plaintiff's claim for punitive damages); *U.S. E.E.O.C. v. Giumarra Vineyards Corp.*, 2012 WL 393333, at *3 (E.D. Cal. Feb. 6, 2012) (rejecting plaintiff's request for defendant's financial condition " two years into the case, two previously-set discovery deadlines dates having passed, and still more than six months pre-trial."); *Klein v. City of Beverly Hills*, 2015 WL 13906841, at *2–3 (C.D. Cal. Apr. 23, 2015) (agreeing to continue fact discovery cut-off for limited purpose of allowing plaintiff to take discovery of defendants' financial information for punitive damages claim contingent upon resolution of defendants' summary judgment motion); *Infinity Canopy, Inc. v. Imp. Fence Direct, Inc. et al.*, 2022 WL 1591702, at *6 (C.D. Cal. Mar. 17, 2022) (cautioning that "plaintiff may not introduce new damages theory or evidence for the first time at trial").

Here, the Court's August 23, 2019, Scheduling Order initially set a February 7, 2020, fact discovery cut-off. (Doc. No. 5, ¶ 1.)  The Court's January 17, 2020, Order granted the Parties a one-week continuance of the fact discovery cut-off "for the exclusive purpose of allowing outstanding depositions to proceed between Monday, February 10, 2020, and Friday, February 14, 2020." (Doc. No. 12.) No other continuances of the fact discovery cut-off were permitted in the litigation. Throughout the fact discovery period, the Parties did not raise any disputes pertaining to Plaintiff's discovery of Defendant's financial condition. This is because Plaintiff neglected to seek any discovery on the matter within the limits of the fact discovery period. Accordingly, Plaintiff presented no evidence of Defendant's financial condition at trial. Because proof of a defendant's financial condition is necessary to sustain a punitive damages award, the Court finds there is no evidentiary basis to preserve the jury's award of $150,000 in punitive damages to Plaintiff.

Accordingly, the Court GRANTS Defendant's Motion for JMOL on this particular issue and VACATES the jury's award of punitive damages in its entirety.

### b. Defendant's Motion for New Trial

Pursuant to Rule 59, Defendant separately moves the Court for a new trial on Plaintiff's interactive process claim. Plaintiff wholly opposes Defendant's instant motion. Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59. Courts have held that, under Rule 59, a new trial may be ordered "even though the verdict is supported by substantial evidence, if 'the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'" *Menlo Logistics, Inc. v. W. Express, Inc.*, 2006 WL 436150, at *3 (N.D. Cal. Feb. 21, 2006) (citing *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir.1999) and *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1452 (9th Cir.1988)); *Thomas v. Costco Wholesale Corp.*, 673 F. App'x 660, 661 (9th Cir. 2016).

A court may grant a motion for a new trial based on insufficiency of the evidence "only if the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result." *EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997); *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) (quoting *Desrosiers v. Flight Int'l of Fla., Inc.*, 156 F.3d 952, 957 (9th Cir. 1998) ("We review the district court's ruling on a Rule 59 motion on the grounds that a verdict is against the weight of the evidence for an abuse of discretion, and we reverse "'only where there is an absolute absence of evidence to support the jury's verdict.'"). Authority to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36, (1980) (per curiam); *Ohio House, LLC v. City of Costa Mesa*, 2022 WL 18284406, at *2 (C.D. Cal. Nov. 16, 2022) (same); *Franks v. Kirk*,

804 F. App'x 610, 611 (9th Cir. 2020) (reviewing district court's ruling on Rule 59 motion for abuse of discretion and affirming decision).

Defendant contends a new trial is appropriate on the grounds that the jury's verdict on Plaintiff's interactive process claim is contrary to the clear weight of the evidence and incorporates its Rule 50(b) arguments in doing so. Because Defendant relies on the same evidentiary record and legal arguments it asserted under its Rule 50(b) Motion, the Court DENIES Defendant's Rule 59 Motion for all of the reasons the Court supplied in its Rule 50(b) decision. As explained, this is not a case where there is an absolute absence of evidence in support of the jury's verdict. In stark contrast, the Court finds substantial evidence underlies the jury's verdicts on both liability as well as past and future compensatory damages. Accordingly, Defendant's Motion for New Trial is DENIED.

### c.  Defendant's Motion for Remittitur

A motion for remittitur of a jury verdict is subject to the same standard as a motion for new trial under Rule 59. *Antuna v. Cnty. of Los Angeles*, 2016 WL 11743323, at *2 (C.D. Cal. Aug. 31, 2016) (citing *In re Hawaii Fed. Asbestos Cases*, 734 F. Supp. 1563, 1572 (D. Haw. 1990). When assessing remittiturs of state-law claims, federal courts apply state law. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 431 (1996). California law expressly authorizes remittitur when there are "excessive damages." Cal. Civ. P. Code § 662.5. Trial courts have broad discretion to remit excessive damages and sit as "independent trier[s] of fact" when doing so. *Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809, 825 (N.D. Cal. 2022), motion to certify appeal denied, 2022 WL 2046827 (N.D. Cal. June 7, 2022) (citing *Lane v. Hughes Aircraft Co.*, 22 Cal. 4th 405, 412 (2000), as modified (May 10, 2000).).

In determining whether damages are excessive, the court "afford[s] great deference to a jury's award of damages and will uphold the award unless it is clearly not supported by the evidence or only based on speculation or guesswork." *Williams v. Gaye*, 895 F.3d 1106, 1128 (9th Cir. 2018). If damages are excessive, the court may either grant a new trial or "deny the motion conditional upon the prevailing party accepting a remittitur"—that is,

a reduction in the amount of damages. *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983). The remittitur must reflect the maximum amount sustainable by the proof to ensure the court does not substitute its judgment for the jury's. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014); *Wooten v. BNSF Ry. Co.*, 819 F. App'x 483, 487 (9th Cir. 2020); *see also Cosby v. Autozone, Inc.*, 598 F. App'x 540, 541 (9th Cir. 2015) (citing *D & S Redi–Mix v. Sierra Redi–Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir.1982).). If the plaintiff "does not consent to the reduced amount, a new trial must be granted." *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983) On the other hand, if the plaintiff "accepts the remittitur, judgment must be entered in the lesser amount." *Id.*

Because Defendant's Motion for Remittitur is subject to the same standard as Defendant's Motion for New Trial, the Court DENIES Defendant's Motion for Remittitur for the same reasons set forth in the Court's Rule 59 analysis. The Court finds the jury's findings on liability as well as past and future compensatory damages are supported by substantial evidence in the trial record, and that deference to those findings is due.

## VI.   CONCLUSION

Given the foregoing, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Judgment as a Matter of Law, DENIES Defendant's Motion for New Trial, and DENIES Defendant's Motion for Remittitur. The Court AFFIRMS the jury's past compensatory damages award for Plaintiff in the amount of $850,000; AFFIRMS the jury's future compensatory damages award for Plaintiff in the amount of $850,000; and VACATES the jury's punitive damages award for Plaintiff in the amount of $150,000.

**IT IS SO ORDERED.**

Dated: February 10, 2023

_____
Hon. William V. Gallo
United States Magistrate Judge