UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISA MARTINEZ,<br><br>                              Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE<br>CORPORATION,<br><br>                              Defendant. | Case No.: 19-CV-1195-WVG<br><br>**ORDER ON PLAINTIFF'S MOTION<br>FOR ATTORNEY FEES** |

## I.     INTRODUCTION

Pending before the Court is Marisa Martinez's Motion for Attorney Fees ("Motion" or "Fee Motion"). (Doc. No. 135.) Plaintiff filed her Fee Motion on September 6, 2022. (*Id.*) On October 4, 2022, Costco Wholesale Corporation ("Defendant," "Costco," or "Company") filed its Opposition to Plaintiff's Motion. (Doc. No. 140.) On October 20, 2022, the Court convened a hearing on Plaintiff's Motion.[1] Having fully considered the

---

[1] The October 20, 2022, hearing also concerned Defendant's Motion for Judgment as a Matter of Law, or, in the Alternative, for New Trial or Remittitur ("Motion for JMOL"). (Doc. No. 131.) Having resolved Defendant's Motion for JMOL, the Court devotes the instant Order to Plaintiff's Fee Motion. (*See* Doc. No. 144.)

1

Parties' moving and opposing papers, and all underlying declarations, exhibits, and oral arguments, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Fee Motion and explains below.

## II.    PROCEDURAL BACKGROUND

Plaintiff seeks compensation from Defendant for attorney fees, expert fees, and costs she reportedly incurred since this litigation began in May 2019. Specifically, Plaintiff moves the Court for (1) an attorney fee award of $2,675,130, which is comprised of a $1,337,565 lodestar enhanced by a multiplier of 2.0; (2) an award of expert fees in the amount of $20,139.50; and (3) and an award of costs in the amount of $6,284.32. Defendant disputes Plaintiff's Fee Motion as unreasonable as to Plaintiff's counsel's hourly rates and time billed and unwarranted as to expert fees, costs, and any upward multiplier sought.

Plaintiff initiated this action on May 13, 2019, and alleged eight causes of action. (Doc. No. 1-2.) Specifically, Plaintiff brought Fair Employment and Housing Act ("FEHA") claims for (1) disability discrimination; (2) failure to accommodate; (3) failure to engage in the interactive process; (4) retaliation; and (5) failure to prevent discrimination, as well as claims for (6) retaliation under California Labor Code section 1102.5; (7) negligent supervision; and (8) intentional infliction of emotional distress. (*Id.*) Plaintiff and Defendant litigated the case through all phases at the trial court level, including fact discovery, expert discovery, summary judgment, pre-trial proceedings, including *in limine* hearings, and trial.

On June 5, 2020, Defendant filed a motion for partial summary judgment on all causes of action except Plaintiff's failure to accommodate claim ("reasonable accommodation claim"). (Doc. No. 21.) On August 21, 2020, then-presiding District Judge Gonzalo P. Curiel granted in part and denied in part Defendant's motion. (Doc. No. 30.) In doing so, Judge Curiel dismissed only Plaintiff's negligent supervision claim. On April 27, 2022, the Parties consented to this Court's jurisdiction for all purposes, including trial. (Doc. No. 73.) The case proceeded to trial, which was bifurcated. The first phase of trial began on May 23, 2022, and ended on June 2, 2022. (Doc. Nos. 75, 113.) On June 3, 2022,

the jury returned its verdict, finding for Defendant on all but one of Plaintiff's claims. (Doc. No. 114.) The jury awarded Plaintiff $1.7 million in compensatory damages, specifically $850,000 for past non-economic damages and $850,000 for future non-economic damages, on her failure to engage in the interactive process claim ("interactive process claim"). (*Id.*; Doc. No. 117.)

The second phase of trial began and ended on June 6, 2022, and resolved the matter of punitive damages. (Doc. No. 120.) The jury returned a verdict in favor of Plaintiff in the amount of $150,000 in punitive damages. (Doc. No. 129.) On June 9, 2022, judgment was entered in favor of Plaintiff in the amount of $1,700,000 in non-economic damages and $150,000 in punitive damages. (Doc. No. 130.) On July 7, 2022, Defendant filed its Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial or Remittitur. (Doc. No. 131.) On February, 10, 2023, the Court granted in part and denied in part Defendant's Motion, affirming the jury's verdict in its entirety on compensatory damages and vacating the jury's verdict on punitive damages. (Doc. No. 144.)

## III.   LEGAL STANDARD

Under the FEHA, a prevailing plaintiff is entitled to an award of reasonable attorney fees. Cal. Gov't Code § 12965. The Court analyzes Plaintiff's Fee Motion consistent with the Ninth Circuit and California's lodestar method for assessing such requests. *Moriarty v. Am. Gen. Life Ins. Co.*, 2022 WL 3907152, at *2 (S.D. Cal. Aug. 19, 2022); *Newton v. Equilon Enterprises, LLC,* 411 F. Supp. 3d 856, 881 (N.D. Cal. Sept. 18, 2019) (citing *Perdue v. Kenny A. ex ref. Winn*, 559 U.S. 542, 546 (2010).). Under the lodestar method, the number of hours reasonably expended is multiplied by a reasonable hourly rate, which is determined by the "prevailing market rates in the relevant community." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001); *see also Nichols v. City of Taft*, 155 Cal.App.4th 1233, 1242-43 (Ct. App. 2007). With this this two-prong framework in mind, the Court first examines Plaintiff's counsel's reported time billed and then turns to counsel's hourly rates.

/ / /

## IV.   DISCUSSION

### a.  Lodestar Assessment

#### i.  Gruenberg Law's Time Billed

Plaintiff reports her counsel and paralegal's time billed and experience levels as follows:

| Individual | Experience | Time Billed |
|---|---|---|
| **Joshua Gruenberg ("Gruenberg")** | Attorney as of December 1992 | 397.2 hours |
| **Benjamin Silver ("Silver")** | Attorney as of November 2012 | 957.4 hours |
| **Joshua Pang ("Pang")** | Attorney as of May 2014 | 94.4 hours |
| **Pamela Vallero ("Vallero")** | Attorney as of December 2015 | 312.5 hours |
| **Jesse Collmann ("Collmann")** | Attorney as of August 2016 | 215.8 hours |
| **Catharine McGlynn ("McGlynn")** | Attorney as of December 2021 | 52.2 hours |
| **Johanna Schiavoni ("Schiavoni")** | Attorney for "more than 20 years" (*See* Doc. No. 135-9, ¶ 2.) | 56.7 hours |
| **Lana Lee ("Lee")** | Paralegal studies completed in 2016 | 90.9 hours |
| **Bianca Villegas ("Villegas")** | Paralegal certified as of December 2018 | 6.0 hours |

/ / /

/ / /

19-CV-1195-WVG

Defendant disputes Plaintiff's reported time billed on various grounds. First, Defendant argues Pamela Vallero's effort in this litigation was largely duplicative of Jesse Collmann's. Defendant surmises Collmann worked up the case until his departure from Gruenberg Law on April 15, 2022, and Vallero retraced Collman's footsteps to prepare for trial. For this reason, Defendant moves the Court to cut all of Collmann's time from the lodestar. Second, Defendant argues Plaintiff's counsel regularly engaged in duplicative billing by (1) staffing multiple attorneys on depositions and court hearings; and (2) holding interoffice conferences that translate to "generic and vague billing records." (Doc. No. 140, 16:24-25.) Third, Defendant argues Plaintiff's proffered time entries are incomprehensibly vague and obscured by "cryptic shorthand" such as Silver's July 22, 2019, billing entry for "Em to MM and JC." (*Id.*, 17:4-6.) Fourth, Defendant argues Plaintiff's counsel impermissibly billed for clerical tasks. Fifth, Defendant argues Plaintiff cannot recover attorney fees for travel time and specifies that Silver's 58.7 hours and Vallero's 56.7 hours spent traveling to and from the courthouse should be cut. Sixth, and finally, Defendant argues all of Schiavoni's time should be struck for its failure to be itemized in the form of billing entries. The Court addresses each of Defendant's arguments in turn.

### 1. Collmann and Vallero's Overlapping Work

"A district court may reduce the hours claimed where the documentation is inadequate or the time was not reasonably expended,' such as where the record reflects duplicative efforts or excessive staffing." *Villasenor v. Sears, Roebuck & Co.*, 2011 WL 13213903, at *5 (C.D. Cal. May 11, 2011) (citing *Sorensen*, 239 F.3d at 1146.). As noted, Defendant posits the lodestar should exclude all of Collmann's time billed because Vallero replaced him and purportedly duplicated all of his labor. Having reviewed the entirety of Collmann and Vallero's time entries, respectively submitted as Exhibits C and D in support of Plaintiff's Fee Motion, the Court disagrees with Defendant's sweeping characterization of the two attorneys' work on the case.

/ / /

The Court finds Vallero's duplication of Collmann's efforts was limited to reviewing 12 videotaped depositions and related transcripts and summarizing their contents ("deposition review") and reviewing and annotating two expert reports ("expert report review"). (Doc. No. 135-3, 6-7.) Vallero's deposition review amounted to 56.1 hours, and her expert report review amount to 4.5 hours. Vallero's collective review work thus amounts to 60.6 hours that was duplicative of Collmann's earlier efforts during fact and expert discovery. Apart from this 60.6-hour overlap, the Court considers Collmann and Vallero's time distinguishable. Collmann's billing entries demonstrate Collmann was staffed on this action since the initial complaint was prepared on or around May 1, 2019, through the Parties' consent to this Court's jurisdiction on April 27, 2022. (*See generally* Doc. No. 135-4; *see also* Doc. No. 73.) Vallero's time reflects she began working on the case on April 15, 2022, approximately two weeks prior to the Parties' consent to magistrate jurisdiction. During those two weeks, specifically between April 15, 2022, and through April 24, 2022, Vallero made duplicative efforts by conducting deposition and expert report review to presumably study the action. (*See* Doc. No. 135-3, 6-7.) Beyond such time, Vallero conducted trial preparation and trial work that coincided with Collmann's departure from Gruenberg Law. Accordingly, the Court finds a reduction of Vallero's time billed limited to the amount of 60.6 hours is appropriate. The Court will not disturb Collmann's time on account of Vallero's duplicative work, particularly because Collmann – not Vallero – worked up the case through summary judgment and early pre-trial proceedings.

## 2. Duplicative Billing across Gruenberg Law

Defendant also argues Gruenberg Law engaged in duplicative billing throughout the lifespan of this case. Defendant directs the Court's attention to Gruenberg Law's decision to staff (1) two attorneys on five depositions; (2) three attorneys on an expert's deposition; and (3) three attorneys on the Early Neutral Evaluation Conference ("ENE"). (*See* Doc. No. 140, 16:5-18.) More broadly, Defendant contends Plaintiff's counsel engaged in impermissible, duplicative billing for interoffice conferences. In doing so, Defendant

neither particularizes its contention nor specifies a dollar amount to reduce the lodestar accordingly. The Court first addresses Defendant's objection to Plaintiff's counsel's staffing decisions, and then deals with the matter of interoffice conferences.

The Ninth Circuit has held a district court "may not set the fee based on speculation as to how other firms would have staffed the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008); *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 314-15 (C.D. Cal. May 15, 2020) (observing "[s]ome 'necessary duplication' of efforts will always be present, but that 'is no reason why the lawyer[s] should perform this necessary work for free'" and citing same.). Defendant invites the Court to strike Plaintiff's counsel's time billed based on a comparison of Costco's staffing preferences to Plaintiff's, but the Court declines to engage in such conjecture. *Mitchell v. Metro. Life Ins. Co.*, 2008 WL 1749473, at *3 (C.D. Cal. Apr. 7, 2008) ("It is not unusual for one attorney to draft a brief, for another attorney to review and revise the brief, and then for the drafting attorney to make final edits and changes."); *Charlebois v. Angels Baseball, LP*, 993 F. Supp. 2d 1109, 1125 (C.D. Cal. May 30, 2012) (declining to strike billing entries "simply because Class Counsel kept each other informed about the case and double-checked each other's work… indeed, many motions this Court denie[d] would have benefitted from a second read and more strategizing by the attorneys involved.").

Here, Defendant has not shown Gruenberg Law's decision to staff two to three attorneys on six depositions or for the ENE resulted in *unnecessary* duplicative billing. *See Kim v. Fujikawa*, 871 F.2d 1427, 1435 n. 9 (9th Cir.1989) ("[T]he participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort."). As cited to herein, the Ninth Circuit and its district courts do not compel attorneys to silo themselves and maintain a one-to-one ratio for each task performed to ensure their compensation for time worked. Gruenberg Law's billing entries reveal Silver acted as the lead associate on the matter, Collmann supported Silver as the lead associate through early pre-trial proceedings, and Gruenberg supervised the litigation as lead trial counsel throughout. That staffing structure was Gruenberg Law's prerogative, as much as it was

Defendant's choice to staff its case more leanly. In itself, the circumstance is not suspect and provides no basis to exclude Plaintiff's counsel's billing entries from a fee award.

As to Plaintiff's counsel's interoffice conferences, "the law does not require the district court to compensate for all the time [plaintiff's] counsel spent conferring among themselves." *Terry v. City of San Diego*, 583 Fed. App'x 786, 791 (9th Cir. 2014) (citing *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) and *Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal.App.4th 359, 673 (Ct. App. 2005).). Concurrently, however, interoffice conferences are not automatically struck from an attorney fee award; instead, they are scrutinized for sufficient specificity and reasonableness. *See Huhmann v. FedEx Corp.*, 2015 WL 6127198, at *5 (S.D. Cal. Oct. 16, 2015), aff'd sub nom. *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102 (9th Cir. 2017) (declining to find two years' worth of interoffice communications as unreasonable given the length of the communications and the purpose of which was to assign work to attorneys on the case).

The Court first notes Defendant fails to specify exactly how much time it believes should be struck from Plaintiff's attorney fee award on account of interoffice conferences amongst Plaintiff's counsel. *See Clark v. Homeservices Lending LLC*, 2012 WL 2390743, at *2 (S.D. Cal. June 25, 2012) (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397-1398 (9th Cir.1992) (commenting "it is unclear which exact billing values Defendants are challenging" and "it is not the Court's job to sift through detailed and voluminous billing records" in denying defendants' challenge to time billed); *LYMS, Inc. v. Millimaki*, 2014 WL 12695754, at *9 (S.D. Cal. Mar. 25, 2014) (noting "typically, the opposing party provides the Court with the number of hours that are deemed excessive for intra-office conferences" and string citing decisions confirming same). Defendant instead offers its conclusion that "Plaintiff's legal team 'inappropriately billed for communicating with one another and delegating tasks to office personnel.'" (Doc. No. 140, 16:19-23.)

8

Without more, a conclusory statement means little to this Court as it parses each of Gruenberg Law's time entries to determine reasonable attorney fees.[2] The Court's independent study of the record yields only a handful of time entries attributable to Gruenberg, Pang, and Vallero that can be considered unnecessarily duplicative for their vagueness surrounding their interoffice conferences. Specifically, the Court calls attention to:

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Gruenberg** | May 14, 2022 (Doc. No. 136-1, 9.) | "Disc w BS JC" | 0.6 |
| **Pang** | September 25, 2020 (Doc. No. 135-5, 6.) | "Email from BS" | 0.1 |
| "" | November 10, 2021 (*Id.*) | "" | 0.3 |
| "" | May 19, 2022 (*Id.*) | "Email from JDG" | 0.1 |
| "" | May 20, 2022 (*Id.*) | "Email from BS" | 0.2 |

---

[2] However reluctantly it does so, the Court adopts a line-by-line approach to its review of Gruenberg Law's billing records to prioritize precision in its lodestar calculation. A percentage-cut approach will not suffice, given the Parties' contentious relations throughout this litigation. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) ("when a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must 'set forth a concise but clear explanation of its reasons for choosing a given percentage reduction.' We have recognized one exception to this rule: '[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.'" (citing *Moreno*, 534 F.3d at 1112.).

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Pang** | May 22, 2022 (*Id.*) | "" | 0.3 |
| "" | "" | "Email from PV" | 0.1 |
| "" | May 23, 2022 (*Id.*) | "Email from BS" | 0.1 |
| "" | May 24, 2022 (*Id.*) | "Email from BS" | 0.2 |
| "" | "" | "" | 0.3 |
| "" | "" | "Emails w/ Lana Lee (LL)" | 0.2 |
| "" | May 25, 2022 (*Id.*) | "Emails from BS" | 0.2 |
| "" | May 27, 2022 (*Id.* at 7.) | "Email to LL" | 0.2 |
| "" | May 30, 2022 (*Id.* at 8.) | "Meeting w/ team" | 0.8 |
| "" | June 4, 2022 (*Id.* at 9.) | "Emails to/from team" | 0.6 |
| **Vallero** | May 29, 2022 (Doc. No. 135-3, 15.) | "Text thread w/ BS" | 0.2 |
| "" | June 4, 2022 (*Id.* at 19.) | "Text thread w BS" | 0.1 |
| "" | June 5, 2022 (*Id.* at 20.) | "Text thread w BS" | 0.2 |

/ / /

/ / /

These time entries ("interoffice conference entries") provide the Court no insight into what – in the broadest possible terms – was discussed amongst Plaintiff's counsel. Thus, the Court has no basis in fact to attribute these interoffice conference entries to work performed in service of this matter. Although this work may be personally known and obvious to Plaintiff's counsel, it is Plaintiff's burden to prove each time entry submitted in support of her Fee Motion merits compensation. In the instance of the interoffice conference entries itemized above, Plaintiff did not meet her burden. While onerous detail of such conferences is not required, a general subject line would have permitted the Court to tie these particular billing entries to the *Martinez* litigation. *Trustees of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000) (stating counsel need only "identify the general subject matter of [their] time expenditures.") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 fn.12 (1983).)

Plaintiff's counsel did not thread the needle as to their interoffice conference entries, despite that their other billing entries met the legal threshold. (*E.g.* Doc. No. 136-1, 26, Gruenberg's July 20, 2022, time entry for "Emails to/from JP/BS re appellate counsel/ post trial mtns" for 0.2 hours and Doc. No. 135-5, Pang's June 1, 2022, time entries for "Emails from BS re JIs" for 0.2 and 0.4 hours; Doc. No. 135-3, Vallero's May 26, 2022, time entry for "Em from JP re punitive damages brief" for 0.1 hours[3].) Given the foregoing, Gruenberg's unnecessarily duplicative billing for interoffice conferences totals 0.6 hours, Pang's totals 3.7 hours, and Vallero's totals 0.5 hours. The Court will make such deductions from the reasonable hours of the lodestar accordingly.

/ / /

/ / /

/ / /

---

[3] Defendant's Opposition implies time entries such as these remain impermissibly vague as to what follows "re." The Court disagrees in light of the Ninth Circuit case law cited throughout this Order, particularly in this section and the section that immediately follows.

### 3.  Vague Time Entries

"Plaintiff's counsel ... is not required to record in great detail how each minute of his time was expended, even "minimal" descriptions that establish that the time was spent on matters on which the district court may award fees is sufficient." *E.E.O.C. v. Harris Farms, Inc.*, 2006 WL 1028755, at *4 (E.D. Cal. Mar. 1, 2006), aff'd, 274 F. App'x 511 (9th Cir. 2008) (citing *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004).); *Fischer v. SJB–P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). Counsel need only "identify the general subject matter of [their] time expenditures." *Tise*, 234 F.3d at 427 (citing *Hensley*, 461 U.S. at 437 fn.12.). To meet its burden on rebuttal, the party opposing the fee application must put forth evidence challenging the accuracy and reasonableness of the hours billed. *Gates*, 987 F.2d at 1398-1399; *McGrath v. County of Nevada*, 67 F.3d 248, 255-256 (9th Cir.1995); *Gates v. Gomez*, 60 F.3d 525, 534-35 (9th Cir.1995).

Here, Defendant argues Plaintiff's counsel's billing entries are not compensable for their vagueness. (Doc. No. 140, 17:1-5.) Defendant cites to examples of Plaintiff's counsel's shorthand time entries and deems them inscrutable, for example, Silver's August 7, 2019, billing entry for "Emails w/ MM, JC, JDG" and Collmann's same-dated billing entry for "Emails from LL, BS, JDG re docs." (*Id.*, 17:5-10.) The Court does not find the cited entries incomprehensible *because of* their "cursory" shorthand form and certainly does not view them as "cryptic" as Defendant's Opposition frames it. (*See id.*) Defense counsel conceded this point during the hearing on Plaintiff's Fee Motion and explained the vagueness is instead attributable to "a complete lack of any kind of meaningful description of what work was performed." (Doc. No. 143, 75:10-20.) Despite clarifying its position during oral argument, Defendant neither accounts for *all* entries it deems impermissibly vague nor assigns a hard-dollar value to reduce the lodestar in substantiation of its Opposition.  Nevertheless, the Court agrees a review of Gruenberg Law's billing entries for vagueness is in order.

/ / /

/ / /

Having reviewed the entirety of Plaintiff's counsel and paralegal's time entries, the Court calls attention to all billing entries structured as "Em[ail] w[ith] [initials]," "Call w[ith] [initials]," "Meet[ing] w[ith] [intials]," and "Disc[ussion] w[ith] [initials]" ***without more***. (*E.g.* Doc. No. 136-1, 17, Gruenberg's June 1, 2022, time entry for "Meet w MM" for 0.8 hours; Doc. No. 135-2, 25, Silver's August 7, 2019, time entry for "Emails w MM, JC, JDG" for 0.2 hours; and Doc. No. 135-4, 22, Collmann's March 18, 2022, time entry for "Emails from MM/BS" for 0.1 hours.) The Court refers to these collective billing entries as "vague time entries."  Although they are structured similarly to the interoffice conference entries, the vague time entries are distinct in their inclusion of Plaintiff, members of her family, and/or expert witnesses in the billing event. Notwithstanding this distinction, the vague time entries suffer the same defect as the interoffice conference entries, namely the lack of any factual specificity as to the purpose or general subject matter of the task billed for. By withholding a trace of specificity, Plaintiff leaves the Court to play an impossible guessing game – as to what triggered the event, what was discussed in the broadest terms, and even whether the event billed for related to this litigation at all. It bears repeating that the only individuals to whom these considerations may be blatantly obvious are Plaintiff's attorneys and only them. Certainly, the Court is not in the business of awarding seven-figure fee awards – let alone any dollar amount – without evidentiary basis and declines to do so here. Plaintiff bears a burden to establish her attorney's billed communications with her, her family, and expert witnesses were, at minimum, tethered to the general events of this litigation. She did not meet that burden in this instance, as detailed below.

As aforementioned, Plaintiff's counsel did not need to risk disclosing privileged information or trial strategy to meet their burden here. The addition of "re" followed by a high-level description of the subject matter for each of the vague time entries would have cured the deficiency. To Plaintiff's counsel's credit, most of their billing entries meet the bare-bones threshold to merit an award of attorney fees. *Tise*, 234 F.3d at 427 (citing *Hensley*, 461 U.S. at 437 fn.12.) (identifying the "general subject matter of [counsel's] time

expenditures" suffices to establish that the time was spent on tasks that would properly form the basis of a fee award). As itemized immediately below, the Court finds the following time entries, limited to Gruenberg, Silver, and Collmann's billing records,[4] impermissibly vague and thus not suitable for compensation:

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Gruenberg** | April 2, 2019 (Doc. No. 136-1, 3.) | "Emails to/from BS/ MM" | 0.2 |
| """ | January 21, 2020 (*Id*. at 5.) | "Call witness" | 0.2 |
| """ | February 13, 2022 (*Id*. at 6.) | "Meet w MM and BS" | 1.2 |
| """ | February 26, 2020 (*Id*.) | "Call with BS, DR" | 1.2 |
| """ | April 6, 2020 (*Id*. at 7.) | "Conference w/ MM" | 1.0 |
| """ | May 14, 2020 (*Id*. at 9.) | "Disc w BS JC" | 0.6 |
| """ | May 19, 2020 (*Id*. at 10.) | "Conf w/ D. Reilly" | 0.7 |
| """ | January 21, 2021 (*Id*. at 13.) | "Emails from BS/MM" | 0.2 |
| """ | November 12, 2021 (*Id*. at 14.) | "Witness contact info" | 0.2 |
| """ | November 14, 2021 (*Id*.) | "Call witness" | 0.2 |

---

[4] The Court finds the billing records for Vallero, Pang, McGlynn, Lee, or Villegas do not suffer from any defect premised upon vagueness as discussed herein.

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Gruenberg** | November 22, 2021 (*Id.*) | "Call w/ MM" | 1.2 |
| "" | April 26, 2022 (*Id.* at 18.) | "Telephone conference w/ MM" | 0.5 |
| "" | April 28, 2022 (*Id.*) | "Conference w/ MM" | 0.5 |
| "" | June 1, 2022 (*Id.* at 24.) | "Meet w/ MM" | 0.8 |
| **Silver** | February 28, 2019 (Doc. No. 135-2, 6.) | "Em btw me, MM, JDG" | 0.3 |
| "" | March 1, 2019 (*Id.*) | "Emails w MM and JDG" | 0.2 |
| "" | March 6, 2019 (*Id.*) | "" | 0.2 |
| "" | March 7, 2019 (*Id.*) | "" | 0.3 |
| "" | March 8, 2019 (*Id.*) | "" | 0.2 |
| "" | March 13, 2019 (*Id.*) | "" | 0.2 |
| "" | March 14, 2019 (*Id.*) | "" | 0.2 |
| "" | March 15, 2019 (*Id.*) | "" | 0.2 |
| "" | March 18, 2019 (*Id.*) | "Em w MM" | 0.1 |

19-CV-1195-WVG

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Gruenberg** | March 19, 2019 (*Id.*) | "Emails w MM and JDG" | 0.1 |
| "" | April 15, 2019 (*Id.* at 7.) | "Em re meeting" | 0.1 |
| "" | April 17, 2019 (*Id.*) | "Em from MM" | 0.1 |
| **Silver** | April 17, 2019 (*Id.*) | "Call with MM and JDG" | 0.3 |
| "" | May 1, 2019 (*Id.*) | "Call with MM and JDG" | 0.4 |
| "" | May 8, 2019 (*Id.*) | "Call with MM" | 0.5 |
| "" | July 22, 2019 (*Id.* at 9.) | "Em to MM and JC" | 0.2 |
| "" | August 7, 2019 (*Id.* at 10.) | "Emails w MM, JC, and JDG" | 0.2 |
| "" | August 27, 2019 (*Id.* at 12.) | "Meet with MM" | 0.7 |
| "" | September 2, 2019 (*Id.*) | "Em from MM" | 0.1 |
| "" | October 9, 2019 (*Id.* at 13.) | "Call w MM" | 1.3 |
| "" | November 26, 2019 (*Id.*) | "Emails w MM, JC" | 0.2 |
| "" | November 27, 2019 (*Id.*) | "Call w/ MM" | 0.4 |

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Silver** | January 16, 2020 (*Id.* at 15.) | "Disc w MM" | 0.4 |
| "" | February 11, 2020 (*Id.* at 17.) | "Meet w MM and JC" | 0.3 |
| "" | "" | "Em from MM" | 0.1 |
| "" | February 13, 2020 (*Id.*) | "Meet with MM and JDG" | 1.2 |
| "" | February 24, 2020 (*Id.* at 18.) | "Meet with MM" | 0.3 |
| "" | February 26, 2020 (*Id.*) | "Call w/ JDG, DR" | 1.2 |
| "" | April 21, 2020 (*Id.* at 21.) | "Call w MM" | 0.9 |
| "" | April 29, 2020 (*Id.* at 22.) | "Call w Reilly" | 0.4 |
| "" | April 20, 2020 (*Id.*) | "" | 0.2 |
| "" | May 5, 2020 (*Id.*) | "Call w MM" | 0.7 |
| "" | May 12, 2020 (*Id.* at 23.) | "Disc w MM" | 0.4 |
| "" | June 22, 2020 (*Id.* at 25.) | "Emails w MM" | 0.1 |
| "" | July 7, 2020 (*Id.* at 26.) | "Call w MM" | 0.3 |

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Silver** | August 21, 2020 (*Id*. at 27.) | "Emails w MM, JDG, JC" | 0.2 |
| "" | "" | "Call w MM" | 0.3 |
| "" | August 25, 2020 (*Id*.) | "Emails w MM and JC" | 0.3 |
| "" | "" | "Call w MM" | 0.3 |
| "" | January 20, 2021 (*Id*. at 31.) | "Emails w MM, JDG, JC" | 0.2 |
| "" | September 21, 2021 (*Id*. at 32.) | "Emails w MM" | 0.2 |
| "" | September 21, 2021 (*Id*.) | "Em w MM" | 0.1 |
| "" | November 17, 2021 (*Id*.) | "Emails   w   Kelsey Ciarmboli" | 0.1 |
| "" | December 3, 2021 (*Id*. at 34.) | "Em from Aptus" | 0.1 |
| "" | December 14, 2021 (*Id*.) | "Em w Aptus" | 0.1 |
| "" | April 22, 2022 (*Id*. at 38.) | "Texts with client" | 0.2 |
| "" | May 12, 2022 (*Id*. at 42.) | "Text with client" | 0.2 |
| "" | "" | "Meet  w  MM,  husband  [,] and son" | 2.2 |
| "" | May 15, 2022 (*Id*.) | "Texts with client" | 0.2 |

19-CV-1195-WVG

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Silver** | May 16, 2022 (*Id.*) | "Text from MM" | 0.2 |
| "" | May 19, 2022 (*Id.* at 43.) | "Emails and call w Erika Couris" | 0.3 |
| "" | "" | "Em from Brian Lenzkes" | 0.1 |
| "" | May 21, 2022 (*Id.* at 44.) | "Texts with client" | 0.3 |
| "" | May 23, 2022 (*Id.* at 45.) | "Call w MM" | 0.4 |
| "" | May 25, 2022 (*Id.* at 46.) | "Emails and call w Erika Couris" | 0.3 |
| "" | May 25, 2022 (*Id.*) | "Em w PV, DR" | 0.1 |
| "" | May 27, 2022 (*Id.* at 47.) | "Call w MM" | 0.5 |
| "" | May 31, 2022 (*Id.* at 49.) | "Call w MM" | 0.5 |
| "" | June 3, 2022 (*Id.* at 50.) | "Call MM" | 0.1 |
| "" | July 20, 2022 (*Id.* at 52.) | "Call with client" | 0.2 |
| **Collmann** | January 10, 2020 (Doc. No. 135-4, 9.) | "Call w Debra Reilly, JDG, BS, disc after" | 1.9 |
| "" | February 11, 2020 (*Id.* at 10.) | "Meet w MM and BS" | 0.3 |

19

| "" | March 18, 2022 (*Id*. at 22.) | "Emails from MM/BS" | 0.1 |
|---|---|---|---|

Collectively, 8.7 hours from Gruenberg, 20.7 hours from Silver, and 2.3 hours from Collmann derive from vague time entries whose purpose and/or subject matter is wholly undefined. For these entries' complete lack of factual specificity, the Court opines there is no legitimate basis upon which attorney fees may be awarded. Accordingly, the Court shall reduce Gruenberg's hours by an additional 8.7, Silver's hours by 20.7, and Collmann's hours by 2.3.

### 4.  Time Billed for Clerical Tasks

Defendant argues Gruenberg Law's billing entries are rife with clerical tasks that compel exclusion from the lodestar's calculation. Supreme Court precedent makes clear "'purely clerical or secretarial tasks should not be billed at a paralegal's [or lawyer's] rate, regardless of who performs them ... [The] dollar value [of such non-legal work] is not enhanced just because a lawyer does it.'" *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989); *Huhmann v. FedEx Corp.*, 2015 WL 6127198, at *2 (S.D. Cal. Oct. 16, 2015), aff'd sub nom. *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102 (9th Cir. 2017) (citing *Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1543 (9th Cir. 1992).); *Int'l Refugee Assistance Project v. Kelly*, 2017 WL 3263870, at *7 (C.D. Cal. July 27, 2017). Consequently, courts have eliminated clerical tasks from fee awards. *Salinas v. FCA US, LLC*, 2019 WL 4259770, at *6 (E.D. Cal. Sept. 9, 2019) (citing, e.g., *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) and *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997).); *Hernandez v. FCA US, LLC*, 2019 WL 2932637, at *4 (C.D. Cal. Jan. 4, 2019) (reducing fee award for time spent on review and audit billing for its clerical nature); *Viveros v. Donahoe*, 2013 WL 1224848, at *9 (C.D. Cal. Mar. 27, 2013) (same).

In its Exhibit C submitted in support of its Opposition to Plaintiff's Fee Motion, Defendant samples time entries from Gruenberg, Silver, Lee, and Villegas' billing records to show clerical tasks that Gruenberg Law billed in this suit. Having reviewed those

sampled time entries, the Court finds the entries attributable to clerical tasks for which an award of fees is not owed. Accordingly, the Court will deduct (1) 1.7 hours of clerical time Gruenberg billed less 0.2 hours for a November 12, 2021, time entry for "witness contact info," which this Court already deducted for impermissible vagueness, thus amounting to a net reduction of 1.5 hours of Gruenberg's time; (2) 3.7 hours of clerical time Silver billed, which Defendant incorrectly summated to 23.9 hours; (3) 23.9 hours of clerical time Lee billed; and (4) 1.2 hours of clerical time Villegas billed.

Separate from Defendant's sampling of Gruenberg Law's time entries for clerical tasks, the Court finds the following time entries should also be stricken for their purely clerical nature from Plaintiff's reasonable hours' determination:

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Gruenberg** | February 26, 2022 (Doc. No. 136-1 at 6.) | "Em from BS re transcripts for expert reports" | 0.1 |
| """" | March 3, 2020 (*Id.*) | "Em from SmartDeps re depo transcripts" | 0.1 |
| """" | March 3, 2020 (*Id.*) | "Em from P. Schuller re invoice for depos" | 0.1 |
| """" | May 12, 2020 (*Id.* at 9.) | "Emails to/from BS/OC re Dr. Kalish payment" | 0.1 |
| """" | June 1, 2020 (*Id.* at 10.) | "Emails to/from BS OC re H. Fabian payment" | 0.2 |
| """" | July 3, 2020 (*Id.*) | "Emails to/from D. Reilly re invoice" | 0.2 |
| """" | May 18, 2021 (*Id.* at 13.) | "Emails from BS/ T. Hunter re time estimates" | 0.1 |
| """" | September 23, 2020 (*Id.* at 11.) | "Em to T. Hunter re trial transcripts" | 0.1 |

19-CV-1195-WVG

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Gruenberg** | September 23, 2020 (*Id.*) | "Em from T. Hunter re S. Mantanona/J. Daleo depo transcripts" | 0.2 |
| """ | September 24, 2020 (*Id.*) | "Emails to/from T. Hunter re H. Fabian depo transcripts" | 0.1 |
| """ | September 28, 2020 (*Id.* at 12.) | "Em from T. Hunter re trial clips" | 0.1 |
| """ | May 18, 2021 (*Id.* at 13.) | "Emails from BS/ T. Hunter re time estimates" | 0.1 |
| """ | July 21, 2021 (*Id.*) | "Em to LL re disbursement" | 0.1 |
| """ | November 29, 2021 (*Id.* at 15.) | "Em to/from BS re purchasing depo transcripts" | 0.2 |
| """ | December 10, 2021 (*Id.*) | "Em to LL re Uber ride" | 0.1 |
| """ | December 11, 2021 (*Id.*) | """ | 0.1 |
| """ | May 16, 2022 (*Id.* at 19.) | "Em from M. Brown re courtroom for trial" | 0.1 |
| **Silver** | July 22, 2019 (Doc. No. 135-2, 9.) | "Meet w MM husb re doc drop off" | 0.2 |
| """ | August 6, 2019 (*Id.* at 10.) | "Emails w LL and JC re notice of appearance and filing confirmation" | 0.1 |
| """ | January 20, 2020 (*Id.* at 16.) | "Emails re lodging appearance" | 0.1 |

19-CV-1195-WVG

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Silver** | February 9, 2020 (*Id*. at 17.) | "Emails w ct rptr re transcripts" | 0.2 |
| "" | "" | "Emails re depo transcript" | 0.1 |
| "" | February 19, 2020 (*Id*. at 18.) | "Emails w LL re exhibit binders" | 0.3 |
| "" | March 2, 2020 (*Id*.) | "Em w JDG re transcript" | 0.1 |
| "" | March 5, 2020 (*Id*. at 19.) | "Em w DR re dropbox" | 0.1 |
| "" | March 20, 2020 (*Id*. at 20.) | "Emails w OC re Ct rptr contact and errata" | 0.2 |
| "" | April 8, 2020 (*Id*.) | "LL em re dropbox" | 0.1 |
| "" | April 15, 2020 (*Id*. at 21.) | "Em from OC re depo link" | 0.1 |
| "" | April 15, 2020 (*Id*. at 21.) | "Call w Bjierke re depo link" | 0.2 |
| "" | April 27, 2020 (*Id*. at 22.) | "Em from Aptus re remote depos" | 0.2 |
| "" | April 29, 2020 (*Id*.) | "Em w DR re remote link" | 0.1 |
| "" | May 6, 2020 (*Id*. at 23.) | "Em from Aptus re remote depos" | 0.1 |
| "" | May 14, 2020 (*Id*. at 24.) | "Em w ct rptr re transcript" | 0.1 |

19-CV-1195-WVG

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Silver** | May 19, 2020 (*Id.*) | "Emails w JDG, Aptus re transcript" | 0.1 |
| "" | May 20, 2020 (*Id.*) | "Emails w ct rprt re transcript" | 0.1 |
| "" | May 21, 2020 (*Id.*) | "Em w ct rptr re transcript" | 0.1 |
| "" | "" | "Em w JDG re transcript" | 0.1 |
| "" | "" | "Em w ct reporter re addtil transcript" | 0.1 |
| "" | May 22, 2020 (*Id.*) | "Em w JDG re Couris transcript" | 0.1 |
| "" | May 27, 2020 (*Id.*) | "Em w ct rptr re prior depo exhibits" | 0.2 |
| "" | May 28, 2020 (*Id.* at 24.) | "Emails w ct rptr re exhibits" | 0.2 |
| "" | May 29, 2020 (*Id.*) | "Emails w OC re Fabian checks, find postage, provide" | 0.3 |
| "" | May 30, 2020 (*Id.*) | "Em w JDG and Aptus re transcript" | 0.1 |
| "" | May 29, 2020 (*Id.* at 24.) | "Emails confirming Fabian checks" | 0.1 |
| "" | June 1, 2020 (*Id.* at 25.) | "Emails w JDG re cutting new check" | 0.2 |
| "" | August 13, 2020 (*Id.* at 27.) | "Em re Hearing vacated" | 0.1 |

19-CV-1195-WVG

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Silver** | September 11, 2020 (*Id.* at 28.) | "Emails w Mimecast, transfer exhibits" | 0.4 |
| "" | "" | "Emails w OC office confirming exhibi[t] transfers" | 0.2 |
| "" | December 30, 2020 (*Id.* at 30.) | "Em from LL re filing" | 0.1 |
| "" | May 18, 2021 (*Id.* at 31.) | "Emails w JDG, LL re dates" | 0.1 |
| "" | "" | "Emails w JDG, videographer, JC re time estimates" | 0.2 |
| "" | November 30, 2021 (*Id.* at 33.) | "Emails w Aptus, JC, LL, BV, re transcript" | 0.2 |
| "" | "" | "Emails w Aptus" | 0.1 |
| "" | "" | "Emails LL, JC re transcript" | 0.1 |
| "" | March 30, 2022 (*Id.* at 35.) | "Em to LL re MM file on server" | 0.1 |
| "" | April 12, 2022 (*Id.*) | "Emails to/from AV re exhibit binders" | 0.2 |
| "" | April 21, 2022 (*Id.* at 38.) | "Em LL, JC confirm trial notebook delivery" | 0.2 |
| "" | May 3, 2022 (*Id.* at 40.) | "Emails w OC re exhibit stamps" | 0.2 |
| "" | May 16, 2020 (*Id.* at 42.) | "Em from M. Brown re ctroom for trial" | 0.1 |

19-CV-1195-WVG

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Silver** | May 17, 2022 (*Id*. at 42.) | "Emails to/from LL/ PV re technology in ctroom" | 0.2 |
| "" | May 18, 2022 (*Id*. at 43.) | "Trial Tech Setup/ Check with travel" | 0.2 |
| "" | May 22, 2022 (*Id*. at 44.) | "Em to/from PV/JDG re opening powerpoint" | 0.2 |
| | May 30, 2022 (*Id*. at 48.) | "Emails to PV/LL re filing exhibits" | 0.1 |
| "" | June 2, 2022 (*Id*. at 50.) | "Em from M. Brown re P's contact info" | 0.1 |
| **Vallero** | May 16, 2022 (Doc. No. 135-3 at 10.) | "Em from BS re deposition transcripts" | 0.2 |
| "" | May 17, 2022 (*Id*.) | "Emails to/from videographer re depo videos" | 0.2 |
| | May 18, 2022 (*Id*.) | "Trial tech set up" | 1.0 |
| | May 25, 2022 (*Id*. at 12.) | "Emails to/from court reporter re daily transcript" | 0.1 |
| "" | May 26, 2022 (Doc. No. 135-3, 13.) | "Em from BS- Copy of MM direct" | 0.1 |
| | May 26, 2022 (*Id*. at 13.) | "Emails to/from court reporter re daily transcript" | 0.1 |
| "" | May 28, 2022 (*Id*. at 13.) | "Forwarded dailies to BS" | 0.1 |

19-CV-1195-WVG

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Vallero** | May 28, 2022 (*Id*. at 14.) | "Emails to/from court reporter re daily transcript" | 0.1 |
| """ | """ | """ | 0.1 |
| """ | May 29, 2022 (*Id*. at 15.) | """ | 0.1 |
| """ | """ | """ | 0.1 |
| """ | May 30, 2022 (*Id*. at 16.) | """ | 0.1 |
| """ | """ | """ | 0.1 |
| """ | May 31, 2022 (*Id*. at 17.) | """ | 0.1 |
| """ | """ | """ | 0.1 |
| """ | June 27, 2022 (*Id*. at 19.) | "Em from ct reporter re transcript" | 0.1 |
| """ | June 6, 2022 (*Id*. at 20.) | "Em from ct re transcript" | 0.1 |
| """ | """ | """ | 0.1 |
| """ | June 7, 2022 (*Id*. at 21.) | "Em from ct reporter re invoice" | 0.1 |
| **Collmann** | July 10, 2019 (Doc. No. 135-4, 5.) | "Emails from BS, LL re calendaring for ENE, CMC" | 0.1 |
| """ | January 15, 2020 (*Id*. at 9.) | "Em from BS to Court reporter re depo" | 0.2 |
| """ | May 20, 2020 (*Id*. at 13.) | "Em to/from Court Reporter re Depo Transcripts" | 0.1 |

19-CV-1195-WVG

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Collmann** | July 23, 2020 (*Id.* at 15.) | "Emails from MM/BS re hearing dates" | 0.1 |
| """ | August 4, 2020 (*Id.* at 16.) | "Em from LL re docket report" | 0.1 |
| """ | """ | "Review docket report" | 0.1 |
| """ | November 30, 2021 (*Id.* at 21.) | "Emails from BS re D. Reilly depo transcript" | 0.1 |
| """ | """ | "Em from Aptus re D. Reilly depo" | 0.1 |
| """ | """ | "Em from BS re D. Reilly depo on server" | 0.1 |
| """ | December 15, 2021 (*Id.* at 22.) | "Emails from JDG/BS re Daleo clips" | 0.1 |
| """ | January 4, 2022 (*Id.* at 22.) | "Em from court re filing of official transcript" | 0.1 |
| """ | April 20, 2022 (*Id.* at 24.) | "Emails from LL/BS re courtesy copies from chambers" | 0.2 |
| """ | April 21, 2022 (*Id.* at 25.) | "Emails from BS/OC re hard copy of trial notebook" | 0.1 |
| """ | April 25, 2022 (Id.) | "Emails f[ro]m BS/PV re depo transcripts at trial" | 0.1 |
| """ | """ | "Em from BS re combined trial exhibits" | 0.2 |
| **Lee** | August 4, 2022 (Doc. No. 135-7, 5.) | "Review em w. CC re exhibits" | 0.3 |

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Lee** | July 7, 2022 (*Id.*) | "Email re: certified transcripts" | 0.1 |
| """ | """ | "Email with PV re: certified transcripts" | 0.1 |
| """ | July 6, 2022 (*Id.*) | "Email w/ PV and BS re: transcripts" | 0.1 |
| """ | June 27, 202 (*Id.*) | "Email w/ BS and PV re: transcripts" | 0.1 |
| """ | June 9, 2022 (*Id.*) | "Email w/ PV re: transcript" | 0.1 |
| """ | June 8, 2022 (*Id.*) | "Email w/ pv re: transcript" | 0.1 |
| """ | June 7, 2022 (*Id.* at 5.) | "Review reporter's transcript" | 0.1 |
| """ | """ | "Email w/ pv re: transcript" | 0.1 |
| """ | June 7, 2022 (*Id.*) | "Email w PV re transcript invoice" | 0.1 |
| """ | """ | """ | 0.1 |
| """ | May 31, 2022 (*Id.*) | "Email re: official transcript" | 0.1 |
| """ | May 30, 2022 (*Id.* at 6.) | "Email re: Invoice for Reporter's Transcript" | 0.1 |
| """ | May 29, 2022 (*Id.*) | "Email re: expert's invoice" | 0.1 |

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Lee** | May 19, 2022 (*Id*.) | "Filing a MOTION to Allow the Use of Electrical Equipment" | 0.2 |
| """" | "" | "Email re: courtroom: | 0.1 |
| """" | May 16, 2022 (*Id*.) | "Email re: printing depo transcripts" | 0.1 |
| """" | May 2, 2022 (*Id*. at 7.) | "Email w/ BS, JDP, PV and client re: deposition vol.1" | 0.1 |
| """" | April 25, 2022 (*Id*.) | "Email w/ PV and BS re: transcripts" | 0.1 |
| """" | April 22, 2022 (*Id*.) | "Filing Notice of appearance" | 0.2 |
| """" | """" | "Email w BS, PV re: Trial notebook delivery" | 0.2 |
| """" | """" | "Email w/ server re: notebook delivery" | 0.2 |
| """" | April 21, 2022 (*Id*.) | "Filing proposed jury instructions" | 0.2 |
| """" | April 20, 2022 (*Id*.) | "Filing objections to proposed jury instructions" | 0.2 |
| """" | April 20, 2022 (*Id*. at 8.) | "Email w/ server re: Deliver trial binder" | 0.1 |
| """" | December 27, 2021 (*Id*.) | "Email re: MIL transcript" | 0.1 |
| """" | December 14, 2021 (*Id*.) | "Email re: Invoice for Reporter's Transcript" | 0.1 |

19-CV-1195-WVG

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Lee** | December 1, 2021 (*Id*.) | "Email re: electronic transcript" | 0.1 |
| "" | December 1, 2021 (*Id*.) | "Email re: MIL delivery" | 0.1 |
| "" | November 30, 2021 (*Id*. at 9.) | "Email re: expert transcript" | 0.1 |
| "" | May 14, 2021 (*Id*.) | "Filing of Notice of Appearance JC" | 0.2 |
| "" | September 10, 2020 (*Id*.) | "Email w/ BS, JC, JDP re: list of all deposition transcripts" | 0.1 |
| "" | September 4, 2020 (*Id*.) | "Filing pretrial disclosures" | 0.2 |
| "" | July 10, 2020 (*Id*. at 10.) | "Email w/ court reporter re: exhibit stickers" | 0.4 |
| "" | February 26, 2020 (*Id*. at 11.) | "Email w/ client re: deposition transcript" | 0.2 |
| "" | March 20, 2020 (*Id*.) | "" | 0.1 |
| "" | May 22, 2019 (*Id*. at 14.) | "Email w/ server re: filing of complaint" | 0.1 |
| "" | May 10, 2019 (*Id*. at 14.) | "Preparing complaint packet for filing" | 1.2 |
| "" | May 13, 2019 (*Id*.) | "Email from BS re: filing of complaint" | 0.1 |

19-CV-1195-WVG

| Individual | Time Entry | Description | Time Billed |
|---|---|---|---|
| **Villegas** | February 28, 2020 (Doc. No. 135-8, 4.) | "Review em from court reporter with transcript attached" | 0.2 |
| """ | """ | "Review em from BS re: question on transcript" | 0.1 |
| """ | February 29, 2020 (*Id.*) | "Review em from court reporter with transcript attached" | 0.1 |
| """ | """ | "Review response from BS re: transcript" | 0.1 |
| """ | May 14, 2020 (*Id.*) | "Review em from court report re: expert transcript" | 0.1 |
| """ | May 21, 2020 (*Id.*) | "Review em from court reporter with transcript attached" | 0.1 |
| """ | """ | """ | 0.1 |
| """ | November 24, 2021 (*Id.* at 5.) | "Em to BS re: ECF event types" | 0.1 |
| """ | November 24, 2021 (*Id.*) | "Review response from JC re: ECF event types" | 0.1 |
| """ | November 29, 2021 (*Id.*) | "Em to attorney service re: courtesy copy delivery" | 0.1 |
| """ | August 4, 2022 (*Id.*) | "Edit exhibits PDFs and create cover pages" | 0.3 |
| """ | August 4, 2022 (*Id.* at 6.) | "Filing of post-trial opposition" | 0.2 |

*/ / /*

19-CV-1195-WVG

Given the above, the Court finds (1) Gruenberg's ***additional*** time spent on clerical tasks summates to 2.1 hours, yielding a total of 3.6 hours spent on clerical tasks; (2) Silver's ***additional*** time spent on clerical tasks summates to 7.1 hours, yielding a total of 10.8 hours spent on clerical tasks; (3) Lee's ***additional*** time spent on clerical tasks totals 6.4 hours, yielding a total of 30.3 hours spent on clerical tasks; (4) Villegas' ***additional*** time spent on clerical tasks totals 1.6 hours, yielding a total of 2.8 hours spent on clerical tasks; (5) Vallero spent a total of 3.0 hours on clerical tasks; and (6) Collmann spent a total of 1.8 hours on clerical tasks. The Court shall deduct these total amounts from Gruenberg Law's time billed accordingly.

### 5. Time Billed for Travel

Defendant takes issue with Plaintiff's counsel's billing for time spent traveling to and from the courthouse to appear for hearings and proceedings in this matter. To support its position, Defendant cites to one case dating to 2011, namely *Gallo v. Masco Corp.*, 2011 WL 1627942, at *9 (S.D. Cal. Apr. 28, 2011). The Court finds Defendant's position on travel time unavailing, particularly in light of more recent decisions from district courts within the Ninth Circuit. *Pavillard v. Ignite Int'l, Ltd.*, 2022 WL 2390185, at *3 (C.D. Cal. June 17, 2022) (commenting "The Ninth Circuit has established that travel time and clerical tasks are reasonably compensated at normal hourly rates if such is the custom in the relevant legal market."); *United States v. Prism Autism Found.*, 2022 WL 5264493, at *4 (S.D. Cal. Oct. 6, 2022) (stating "travel time may be "reasonably compensated at normal hourly rates if such is the custom in the relevant legal market" and recognizing same in the Southern District of California) (citing *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992) vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993); *Barzilli v. Intuitive Surgical, Inc.*, 2022 WL 17369627, at *3 (C.D. Cal. Aug. 1, 2022) (awarding fees for travel time); *French v. City of Los Angeles*, 2022 WL 2189649, at *20 (C.D. Cal. May 10, 2022) (rejecting argument that travel time is not compensable) (citing *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014) (adding "[r]easonable travel time by the attorney is compensable, at full rates."). Accordingly, the

Court will not strike or otherwise reduce Plaintiff's counsel's travel time for purposes of calculating the reasonable hours for the lodestar value.

### 6. Schiavoni's Time Billed

Lastly, Defendant argues Schiavoni's time billed must be entirely stricken from the Court's calculation of the reasonable hours informing the lodestar figure for lack of any time entries substantiating the reported time worked. The Court agrees with Defendant. The Schiavoni Declaration submitted in support of Plaintiff's Fee Motion avers Schiavoni "personally expended" 56.7 hours of work on the case, including "(a) multiple consultations with Ms. Martinez's trial counsel; (b) review and analysis of the trial record including trial transcripts and exhibits; (c) detailed review and analysis of Defendant's moving brief and extensive exhibits, along with legal research relating to the numerous issues raised in the briefing; and (d) outlining and drafting Ms. Martinez's opposition brief. Further, I anticipate having to expend additional time assisting in the preparation of the hearing on that motion." (Doc. No. 135.9, ¶ 9.) Strikingly, Schiavoni failed to attach any time records validating the specific dates, times, and tasks amounting to 56.7 hours of labor she reports to have completed in service to this litigation. For this reason, Plaintiff has failed to meet her burden to merit an award of attorney fees for Schiavoni's purported time billed to this matter. Accordingly, the Court shall eliminate from the lodestar figure the entirety of Schiavoni's 56.7 hours of time billed.

### ii. Gruenberg Law's Hourly Rates

To determine whether counsel's hourly rates are reasonable, the Court looks to the "hourly amount to which attorneys of like skill in the area would typically be entitled." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001); *see Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (confirming same and adding the court considers the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.") (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997).). "Evidence that the Court should also consider includes "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate

determinations in other cases, particularly those setting a rate for the plaintiffs' attorney." *Dalfio v. Hanna*, 2022 WL 3578261, at *2 (S.D. Cal. Aug. 19, 2022) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)); *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987); *Polee v. Cent. Contra Costa Transit Auth.*, 2021 WL 308608 (N.D. Cal. Jan. 29, 2021) (same).

In this case, the relevant legal community is the Southern District of California as it is the forum in which the district court sits. Here, the Court finds Plaintiff has sufficiently established the reasonableness of Gruenberg Law's hourly rates based on Plaintiff's declarations detailing counsel's experience, skill, and expertise in labor and employment law, supporting exhibits, and legal authority within this District awarding comparable rates. The Court is not convinced Plaintiff's requested rates should be reduced because Costco's attorneys charge less by the hour; Defendant cites no legal authority to support a deduction on such basis.

As to Gruenberg's hourly rate of $800, case law as recent as 2022 in this District has established that partner-level hourly rates may reasonably range between $450 and $750. *G&G Closed Cir. Events, LLC v. Zarazua*, 2022 WL 3019859, at *2 (S.D. Cal. July 29, 2022); *Gallagher v. Philipps*, 2022 WL 848329, at *3 (S.D. Cal. Mar. 22, 2022) (noting "This District has held a range of rates from $450–750 per hour to be reasonable for a senior partner"); *Youngevity Int'l Corp. v. Smith*, 2018 WL 2113238, at *5 (S.D. Cal. May 7, 2018) ("Courts in this district have held a range of rates from $450-750 per hour reasonable for a senior partner in a variety of litigation contexts and specialties."); *Lopez v. Mgmt. & Training Corp.*, 2020 WL 1911571, at *9 (S.D. Cal. Apr. 20, 2020) (adopting as reasonable hourly rates of $600 to $900 for partners; $500 for 10th-year attorney, and $175 to $200 for paralegals); *Kinder v. Woodbolt Distribution, LLC*, 2021 WL 1226444, at *4 (S.D. Cal. Apr. 1, 2021) (adopting as reasonable hourly rates for partners and associates ranging from $345 to $775). The Court finds the $50 delta – if indeed there is any delta at all – between Gruenberg's $800 hourly rate and the $750 hourly rate this

District has accepted as the high end of the range amongst partners' hourly rates is not so drastic that it can be considered unreasonable. But, as addressed in the *Lopez* case, at least one court in this District held that a $900 hourly rate for partners is reasonable. For this reason, in addition to Gruenberg's 31 years of experience and expertise in employment litigation as set forth in Gruenberg's Declaration, the Court declines to adjust Grunberg's hourly rate of $800. (Doc. No. 136.)

As to Silver, Vallero, and Pang's hourly rate of $600, the Court finds that rate is also reasonable given their respective 13, eight, and nine years as practicing attorneys specializing in employment litigation. *Lopez*, 2020 WL 1911571, at *9 (adopting as reasonable hourly rates of $600 to $900 for partners; $500 for 10th-year attorney, and $175 to $200 for paralegals); *Kailikole v. Palomar Cmty. Coll. Dist.*, 2020 WL 6203097, at *3 (S.D. Cal. Oct. 22, 2020) (adopting as reasonable hourly rate of $550 for 14th-year attorney); *Price v. Synapse Group, Inc.*, at *2 (S.D. Cal. Sept. 24, 2018) (finding reasonable hourly rate of $550 for 12th-year associate). The Court similarly finds Collmann's hourly rate of $550 is reasonable, given his seven years of experience in legal practice. *Flowrider Surf, Ltd. v. Pacific Surf Designs, Inc.*, 2017 WL 2212029, at *2 (S.D. Cal. May 18, 2017) (finding reasonable $480 hourly rate for fourth-year associate); *Kinder, LLC*, 2021 WL 1226444, at *4 (adopting as reasonable hourly rates for partners and associates ranging from $345 to $775). As with Gruenberg's hourly rate, the Court is not persuaded a cut to these four associate attorneys' hourly rates is appropriate in light of any $50 delta emanating from hourly rates approved by other courts within this District.

The Court also finds McGlynn's hourly rate of $350 as a second-year attorney reasonable. *Kailikole*, 2020 WL 6203097, at *3 (S.D. Cal. Oct. 22, 2020) (finding reasonable hourly rate of $300 for a second-year attorney); *Mabeza v. Ashfield Mgt. Services, Inc.*, 2018 WL 1400778 at*4 (S.D. Cal. Mar. 20, 2018) (finding a $300 rate is reasonable for an associate attorney's assistance).); *see also Herring Networks, Inc. v. Maddow*, 2021 WL 409724, at *1 (S.D. Cal. Feb. 5, 2021) (awarding attorney's fees for a mid-level associate with three years of experience at a rate of $470 per hour); *V.A. v. San*

*Pasqual Valley Unified Sch. Dist.*, 2018 WL 3956050 at *4 (S.D. Cal. Aug. 17, 2018) (awarding hourly rate of $325 for attorneys with less than three years of experience).

Finally, the Court adopts as reasonable Lee and Villegas' hourly rate of $250 for their service as paralegals in this case. *Durruthy v. Charter Commc'ns, LLC*, 2021 WL 6883423, at *6   (S.D. Cal. Sept. 30, 2021) (adopting as reasonable hourly rates for paralegals ranging between $175 and $250); *In re Maxwell Techs., Inc., Derivative Litig.*, 2015 WL 12791166 at *5 (S.D. Cal. July 13, 2015) (noting paralegal rates in the Southern District of California have been approved as high as $290); *Herring Networks, Inc. v. Maddow*, 2021 WL 409724 at *7 (S.D. Cal. Feb. 5, 2021) (approving adjusted attorney's fees for paralegals in the hourly rate range of $265 to $280); *Aispuro v. Ford Motor Co.*, 2020 WL 4582677 (S.D. Cal. Aug. 10, 2020) (awarding $200 as an hourly rate for paralegals); *San Diego Comic Conv. v. Dan Farr Productions*, 2019 WL 1599188 at *15 (S.D. Cal. Apr. 15, 2019) (adjusting paralegal and support staff hourly billing rates to $290). The Court thus adopts the attorney and paralegal hourly rates Plaintiff proposes for purposes of determining the lodestar value.

### iii.  Plaintiff's Limited Success at Trial

The Court now addresses a matter of discretion, namely whether a further reduction must be made to Plaintiff's attorney fee award given Plaintiff's limited success at trial. *See Park, ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1037 (9th Cir. 2006) (Beezer, J., concurring) ("where the prevailing party's success is partial or limited, it is within the discretion of the district court to award limited fees."); *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). "Absent circumstances rendering a fee award unjust, fees recoverable ordinarily include compensation for all hours reasonably spent." *Ketchum*, 24 Cal. 4th at 1125; *Lopez v. Routt*, 17 Cal. App. 5th 1006, 1013 (Ct. App. 2017); *Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 623 (9th Cir. 1983) ("If the applicant satisfies its burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee.").

In instances of mixed jury verdicts, the Supreme Court has rejected a mathematical approach to fee calculations, explaining a "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit ... [; t]he result is what matters." *Hensley*, 461 U.S. at 435. Consistent with this understanding, federal and California law calls for a fee award's adjustment to reflect a prevailing plaintiff's limited success. *Id.* at 440; *Park, ex rel. Park,* 464 F.3d at 1037; *Chavez v. City of Los Angeles*, 224 P.3d 41, 53-54 (2010). The Court's inquiry is twofold and first asks whether (1) "plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which [s]he succeeded" and "second, [whether] plaintiff achieve[d] a level of success that [would] make[] the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434; *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2008) (applying *Hensley* test); *see also Chavez*, 224 P.3d at 51 n. 6 (indicating California law contemplates percentage adjustments of the lodestar up and down to reflect a prevailing plaintiff's success).

A downward assessment requires the court to first "deduct from the lodestar hours spent exclusively on unrelated unsuccessful claims" and, second, "evaluate the remaining hours to determine if they were reasonably necessary to achieve the result obtained." *Hensley*, 461 U.S. at 434; *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499–1500 (9th Cir.1995); *Chavez*, 224 P.3d at 53–54. As to the latter, "before hours may be deducted for unsuccessful claims, the claims must be suitable for entirely separate lawsuits," "distinct in both fact and law," and provide no "aid in proving the successful claims." *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 224 (9th Cir. 2013) (granting in part and denying in part fee motion and awarding plaintiff $696,162.78, after plaintiff requested $1,945,726.50 in attorney fees following jury's award of $27,280 limited to Plaintiff's FEHA discrimination claim).

At trial, Plaintiff prevailed on one lone claim for failure to engage in the interactive process under the FEHA. Despite her limited success, the jury was generous in its award of $1.7 million in compensation damages in addition to punitive damages amounting to

$150,000. Even so, Defendant posits Plaintiff's lodestar figure must be reduced by 75 percent to reflect her fractional success on her claims. To support its position, Defendant asserts (1) Plaintiff's interactive process claim rested on facts and legal theories that were entirely distinct from her other, unsuccessful claims, and (2) the fee award should be reduced to reflect the short-lived interactive process period, which Defendant asserts took place over the course of just three months between January 29, 2019, and March 7, 2019.

The Court rejects both of Defendant's positions. In its February 10, 2023, Order on Defendant's Motion for Judgment as a Matter of Law, or in the Alternative, for New Trial or Remittitur, the Court thoroughly addressed the interdependency between Plaintiff's interactive process claim and her other FEHA claims after the Court considered the entirety of the trial record. In doing so, the Court found Plaintiff's claims could not be segregated due to the overlap in witnesses, events, and the relevant time period.[5] (*See* Doc. No. 144, 28:18-29:4; 42:18-20; 42:27-43:5.) While Plaintiff relied upon varied legal theories to support her FEHA claims, those theories rested upon a common set of operative facts surrounding Costco management and leave specialist's responses to her travel-related anxiety and accommodation requests. Those facts cannot be isolated and attributed to any single individual claim Plaintiff brought. Had Plaintiff alleged, for instance, wage and hour claims for violations under the California Labor Code or tort claims such as defamation, the Court's view would be different.

Defendant's rejection of the claims' interrelatedness is informed by statements of fact about Plaintiff's retaliation and failure to accommodate claims, which, taken together, tell the story of a lacking interactive process between Plaintiff and Costco. Defendant thus falls short in establishing Plaintiff's FEHA claims are so distinct from one another that

---

[5] Defendant's Opposition to Plaintiff's Fee Motion defines the interactive process period as a three-month span of time beginning in January 2019 and ending in March 2019. The Court exhaustively addressed Defendant's assumption about the duration of the interactive process period in its February 10, 2023, Order, and found there was substantial evidence to establish the interactive process began as early as 2009. (Doc. No. 144 at 25:10-27:5.)

attorney fees are thus severable. Accordingly, the Court finds there is no basis to reduce Plaintiff's fee award by 75 percent as Defendant proposes or any other percentage, particularly because Plaintiff's requested fee award is less than what the jury awarded Plaintiff. *Cf. Muniz*, 738. F.3d 214 at 224 (approving fee award more than 25 times greater than the jury's damages award).

Further, although Plaintiff prevailed on a single FEHA claim, the jury's generous verdicts on compensatory and punitive damages establish Plaintiff attained a level of success that rendered Gruenberg Law's billed time well spent on this matter. Based on such circumstance, the Court considers Plaintiff's counsel and paralegal's labor in this litigation a satisfactory basis for an award of attorney fees. The Court's conclusion on this point is bolstered by the Court's own line-item adjustments to Gruenberg Law's time billed, which further brings Plaintiff's counsel and paralegal's hourly billing into alignment with the results achieved.

### iv. Lodestar Calculation

In light of the foregoing, the Court calculates the lodestar value of the *Martinez* litigation as follows:

| Individual | Hourly Rate | Hours Billed | Hours Reduction | Adjusted Hours | Lodestar Value |
|---|---|---|---|---|---|
| **Gruenberg** | $800 | 397.2 | -0.6 (duplicative interoffice conferencing)<br><br>-8.7 (vagueness)<br><br>-3.6 (clerical tasks) | 384.3 | $307,440 |
| **Silver** | $600 | 957.4 | -20.7 (vagueness)<br><br>-10.8 (clerical tasks | 925.9 | $555,540 |
| **Pang** | $600 | 94.4 | -3.7 (duplicative interoffice conferencing) | 90.7 | $54,420 |

| Individual | Hourly Rate | Hours Billed | Hours Reduction | Adjusted Hours | Lodestar Value |
|---|---|---|---|---|---|
| Vallero | $600 | 312.5 | -60.6 (duplicative of Collmann's work)<br><br>-0.5 (duplicative interoffice conferencing)<br><br>-3.0 (clerical tasks) | 248.4 | $149,040 |
| Collmann | $550 | 215.8 | -2.4 (vagueness)<br><br>-1.8 (clerical tasks) | 211.6 | $116,380 |
| McGlynn | $350 | 52.2 | 0 | 52.2 | $18,270 |
| Schiavoni | $700 | 56.7 | -56.7 (unsubstantiated) | 0 | $0 |
| Lee | $250 | 90.9 | -30.3 (clerical tasks) | 60.6 | $15,150 |
| Villegas | $250 | 6.0 | -2.8 (clerical tasks) | 3.2 | $800 |
| **Total Lodestar:** | | | | | **$1,217,040** |

### b.  Plaintiff's Requested Multiplier

Once it has set the lodestar figure, the Court has the discretion to apply a fee multiplier. *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001). "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Id*. at 1132. A trial court should "award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation." *Id*. at 1139; *Dang v.*

19-CV-1195-WVG

*Cross*, 422 F.3d 800, 812 (9th Cir.2005); *Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 622 (9th Cir.1993); *McGraw v. Homeservices Lending, LLC*, 2012 WL 2390742, at *3 (S.D. Cal. June 25, 2012) (citing *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 298 (N.D.Cal.1995).).

The court may "adjust[ ] the lodestar figure on the basis of [the] *Kerr* factors not already subsumed in the initial calculation." *McGrath*, 67 F.3d at 252; *E.E.O.C. v. Harris Farms, Inc.*, 2006 WL 1028755, at *2 (E.D. Cal. Mar. 1, 2006), aff'd, 274 F. App'x 511 (9th Cir. 2008) (reciting the *Kerr* factors as follows: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."). At all times, "application of a multiplier is completely within the Court's discretion." *Hess v. Ramona Unified Sch. Dist.*, 2008 WL 5381243, at *8 (S.D. Cal. Dec.19, 2008); *Muniz*, 738 F.3d 214 at 225-226 (citing *Serrano v. Unruh*, 32 Cal.3d 621, 635 (Cal.1982) and underscoring courts' broad discretion in permitting multipliers to enhance attorney fee awards).

Here, the Court finds no sound basis to confer a multiplier on an award of attorney fees to Plaintiff, for 2.0, as Plaintiff requests, or for any other amount. Plaintiff's Fee Motion does not establish that this action placed unique demands upon Plaintiff's counsel's time, labor, or ability to accept other work. To the contrary, Defendant's Exhibit I in support of its Opposition to Plaintiff's Fee Motion confirms Plaintiff's counsel was more than able to accept new cases while maintaining this litigation, amongst other matters. To that end, Plaintiff fails to explain the "undesirability" of her case, save that she was met with fierce opposition from Costco. A formidable opponent is one of the costs of litigation, and one Plaintiff and her attorneys readily accepted as they continued to litigate this case

up to and including trial. Thus, the Court is not swayed by Plaintiff's position that her opponent's truculence merits a multiplier and finds no legal authority to vindicate her position on this point.

Further, Plaintiff fails to explain what circumstances in this case gave rise to a novel or difficult question presented. The Court strains to think of any, particularly when the legal theories raised by Plaintiff's counsel routinely appear in FEHA disability discrimination, reasonable accommodation, interactive process, and retaliation cases in district courts throughout the Ninth Circuit. Additionally, the Court stops short of finding Plaintiff's counsel's representation of the exceptional quality that would warrant a multiplier. *Ketchum*, 24 Cal.4th at 1139. It is true Gruenberg Law's work on this case paid off, given the favorable verdict on Plaintiff's interactive process claim and the jury's substantial damages award on that sole claim. At the same time, the Court would be remiss if overlooked Plaintiff's counsel's stumbles throughout fact and expert discovery. Most glaringly, those stumbles cost Plaintiff her punitive damages award of $150,000 for her counsel's failure to take discovery on Defendant's financial condition. (Doc. No. 144.) Plaintiff's counsel's dilatory approach to discovery also resulted in this Court's decision to grant Defendant's Motion to Strike Plaintiff's Supplemental Expert Report. (Doc. No. 24.) For these collective reasons, the Court denies Plaintiff's request to affix a multiplier in any amount to the lodestar value.

### c. Plaintiff's Request for Expert Fees

Plaintiff separately moves the Court for an award of expert fees in the amount of $20,139.50, which Plaintiff purports to constitute fees incurred by Plaintiff's expert, Debra L. Reilly. Plaintiff's only evidentiary basis for this request is paragraph 43 of the Gruenberg Declaration, which represents "Ms. Reilly charged Plaintiff a total of $20,139.50 for her services" and, as part of Exhibit I, attaches invoices purportedly from Reilly for such services. The Court declines to award expert fees without a declaration from Reilly attesting to the accuracy of the invoices that make up Exhibit I. Even if the Court were inclined to accept such records as true without proof of validity, the Court notes nearly all

of the time entries are block-billed and prevent the Court from evaluating the reasonableness of the time Reilly took to complete each specific task. *De La Riva Const., Inc. v. Marcon Eng'g, Inc.*, 2014 WL 794807, at \*6 (S.D. Cal. Feb. 27, 2014) ("plaintiff's use of block billing has made it difficult for the Court to discern whether Plaintiff had met its burden of demonstrating its hours are reasonable" [internal citations omitted].); *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (affirming reduction of 30 percent to account for block billing and additional 10 percent reduction for excessive and redundant work); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (explaining block billing complicates determining the reasonableness of the time spent on litigation tasks). Plaintiff has failed to meet her evidentiary burden as to expert fees. Accordingly, the Court denies Plaintiff's request for expert fees in its entirety.

### d.  Plaintiff's Request for Costs

Plaintiff requests costs in her Fee Motion and in her Bill of Costs. (Doc. Nos. 135, 134-2.) Plaintiff's Fee Motion seeks a cost award of $6,284.32 for costs attributed to service charges for videotaped depositions, postage, PACER charges, and counsel's travel expenses to attend depositions. (Doc. No. 135.) Plaintiff's Bill of Costs seeks a cost award of $14,028.40 for costs attributed to the complaint's filing, service of process, the original plus one copy of each deposition transcript in this case, and courtesy copies and delivery of same to the Court. (Doc. No. 134-2.)

The Court first addresses Plaintiff's request for costs as memorialized in her Fee Motion. Defendant disputes that those costs are compensable and adds that "nothing in California Code of Civil Procedure section 1033.5, Federal Rule of Civil Procedure 54, or Local Rule 54.1… include[] the items that Plaintiff requests." (Doc. No. 140, 28:4-10.) Civil Local Rule 54.1(b) makes clear that "it is the custom of the Court to allow certain items of costs not otherwise allowed or prohibited by statute or by specific order," thus signaling the Civil Local Rules' intent to award costs that are not expressly provided for

by statute or court order. Civ. L.R. 54.1(b). Thus, the Court has the discretion to award more costs than those explicitly enumerated throughout the applicable rules.

Moreover, Civil Local Rule 54.1(b)(3)(a) provides for a prevailing party's recuperation of the "cost of an original and one copy of any deposition" and adds "depositions need not be introduced in evidence or used at trial to be taxable so long as at the time it was taken it could reasonably be expected that the deposition would be used for trial preparation, rather than mere discovery." Civ. L.R. 54.1(b)(3)(a). Section 1033.5(a)(3)(A) ("Section 1033.5") makes the point even more explicit in stating the "taking, video recording, and transcribing necessary depositions" are recoverable costs for the prevailing party. Cal. Civ. Proc. Code § 1033.5. Defendant's representation to the contrary – that the Local Rules and Section 1033.5 say "nothing" of the sort – is thus mistaken. Accordingly, the Court finds Plaintiff's costs for videotaped deposition services as set forth in the Fee Motion are recoverable, inclusive of the videographer's travel expenses in connection with Cindy Schmertzler's videotaped deposition. (*See* Doc. No. 136-3, Ex. I. at 3; *see also* Civ. L.R. 54.1(b)(3)(c) (allowing recovery of costs for "the reasonable expenses of the deposition reporter, and the notary or other official presiding at the taking of the depositions are recoverable, *including travel and subsistence*") (emphasis added).

The Court additionally finds the PACER charges reported in Exhibit I of Plaintiff's Fee Motion recoverable pursuant to Section 1033.5. *See* Cal. Civ. Proc. Code § 1033.5(a)(1) (allowing recovery of "filing, motion, and jury fees."). Finally, as to Plaintiff's request for costs in her Fee Motion, the Court finds counsel's travel expenses to attend depositions are recoverable. *See* Cal. Civ. Proc. Code § 1033.5(a)(3)(C) (allowing recovery of "travel expenses to attend depositions."). Given the foregoing, the Court GRANTS in entirety Plaintiff's request for costs as set forth in Plaintiff's Fee Motion in the amount of $6,284.32.

///

The Court now addresses Plaintiff's request for costs as set forth in her Bill of Costs, which total $14,028.40. (Doc. No. 134-2.)  As noted, Plaintiff seeks an award of costs specific to the complaint's filing, service of process, the original plus one copy of each deposition transcript in this case, and courtesy copies and delivery of same to the Court. The Court finds each of these costs are allowable under the applicable rules. *See See* Cal. Civ. Proc. Code § 1033.5 (providing for recovery of costs for "filing, motion, and jury fees."); Civ. L.R. 54.1(b)(1) (providing for recovery of costs for fees for service of process); Civ. L.R. 54.1(b)(3)(a) (providing for recovery of costs of an original and one copy of any deposition so long as it was reasonably expected to be used for trial preparation); *see also* Cal. Civ. Proc. Code § 1033.5(a)(3)(A) (same and without qualification); Civ. L.R. 54.1(b)(6)(a) (providing for recovery of costs for courtesy copies either by court order, rule, or statute, or for use as exhibits, admissions into evidence, or attachments to a motion).

Further, the Court finds the nature of these costs are in line with costs that have been awarded in other cases in this District. *Ford v. CEC Entm't Inc.*, 2015 WL 11439033, at *6 (S.D. Cal. Dec. 14, 2015) (finding costs such as "court fees, court reporter charges, delivery and messenger charges, investigators, and travel expenses" would be billed separately from hourly fees and awarding requested costs amounting to $7,888.92); *Smith v. Aetna Life Ins. Co.*, 2020 WL 6055147, at *12 (S.D. Cal. Oct. 14, 2020) (citing *Left Coast Wrestling, LLC v. Dearborn Int'l, LLC*, 2018 WL 2948532, at *2 (S.D. Cal. June 12, 2018) ("Copy, courier, and legal research fees have been awarded by the Ninth Circuit."); *Thalheimer v. City of San Diego*, 2012 WL 1463635, at *9 (S.D. Cal. Apr. 26, 2012) (awarding costs for "telephone charges, copies, filing fees, courier and mailing fees, and internet research."); *Matlink, Inc. v. Home Depot U.S.A., Inc.*, 2008 WL 8504767, at *6-7 (S.D. Cal. Oct. 27, 2008) (allowing delivery fees and electronic research costs as expenses recoverable on attorneys' fees motion).). Given the above, the Court GRANTS in entirety Plaintiff's request for costs as set forth in Plaintiff's Bill of Costs in the amount of $14,028.40.

/ / /

19-CV-1195-WVG

## V.   CONCLUSION

Given the foregoing, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Fee Motion. The Court AWARDS Plaintiff a lodestar value of $1,217,040.00 in attorney fees with no multiplier, DENIES Plaintiff's request for expert fees totaling $20,139.50, and GRANTS Plaintiff's request for costs as memorialized in her Fee Motion in the amount of $6,284.32. Finally, the Court GRANTS Plaintiff's requests for costs in the amount of $14,028.40, as set forth in Plaintiff's Bill of Costs. (Doc. No. 134-2.).

Accordingly, the Court ORDERS Defendant to pay Plaintiff $1,217,040.00 for her attorney's fees as well as $20,312.72 for her total costs incurred throughout this litigation. Defendant shall make full payment of both the total attorney fee award and the total costs award no later than thirty (30) days from the date of this Order's issuance.

**IT IS SO ORDERED.**

Dated: February 23, 2023

_____
Hon. William V. Gallo
United States Magistrate Judge

47

19-CV-1195-WVG